TEXTRON LYCOMING RECIPROCATING ENGINE DIVISION, AVCO CORP. *v.* UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, ET AL.

No. 97–463.   Argued February 23, 1998—Decided May 18, 1998

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, THOMAS, and GINSBURG, JJ., joined. STEVENS, J., filed a concurring opinion, *post*, p. 662. BREYER, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 662.

*Timothy B. Dyk* argued the cause for petitioner. With him on the briefs were *Andrew M. Kramer* and *Daniel H. Bromberg.*

*Stephen A. Yokich* argued the cause for respondents. With him on the brief were *Daniel W. Sherrick, Marsha S. Berzon, James B. Coppess,* and *Laurence Gold.**

JUSTICE SCALIA delivered the opinion of the Court.

The sole question presented for review is whether federal courts have subject-matter jurisdiction of this case under § 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185(a).

I

Petitioner, Textron Lycoming Reciprocating Engine Division (Textron), employs at its Williamsport, Pennsylvania, plant approximately 500 members of respondents, the United Automobile, Aerospace and Agricultural Implement Workers of America and its Local 187 (hereinafter UAW or Union). From April 1, 1994, to April 1, 1997, Textron and the Union were parties to a collective-bargaining agreement that pro-

---

*Solicitor General Waxman, Deputy Solicitor General Wallace, Lisa Schiavo Blatt, Frederick L. Feinstein, Linda Sher, Norton J. Come,* and *John H. Ferguson* filed a brief for the United States as *amicus curiae* urging affirmance.

hibited the Union from striking against Textron for any reason and, through the adoption of a separate memorandum agreement, required Textron to give the Union seven days' notice before entering into any agreement to "subcontract out" work that would otherwise be performed by Union members. In June 1994, Textron announced that it planned to subcontract out a volume of work that would cause roughly one-half of the Union members to lose their jobs.

Thereafter, in November 1995, the Union filed the present complaint in Federal District Court, alleging that Textron fraudulently induced the Union to sign the collective-bargaining agreement. Specifically, the Union claims that both before and during negotiations it repeatedly asked Textron to provide any information it might have regarding plans to subcontract out work that would otherwise be performed by Union members; and that during negotiations, Textron had in fact completed such a plan, but despite the Union's repeated requests said nothing about its existence. As redress, the Union seeks "a declaratory judgment that the existing collective bargaining agreement between the parties is voidable at the option of [the] UAW," and "compensatory and punitive damages . . . to compensate [the Union and its members] for the harm caused by [Textron's] misrepresentations and concealments and to deter other Employers from similar conduct." App. 19. The Union does not allege that either it or Textron ever violated the terms of the collective-bargaining agreement. As the basis of federal subject-matter jurisdiction, the complaint invokes § 301(a) of the Labor Management Relations Act, 29 U. S. C. § 185(a).[1]

---

[1] The Union's brief before this Court asserts, in a footnote and without elaboration, that "there may well be jurisdiction over this case under 28 U. S. C. § 1331 as well as under § 301, since the case 'arises under' the federal common law of contract." Brief for Respondents 23, n. 11. That issue was not contained within the Question Presented in the Petition for Certiorari, which read:

"Whether Section 301 of the Labor-Management Relations Act, 29 U. S. C. § 185, which confers federal jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization,' permits a

The District Court dismissed the complaint for lack of subject-matter jurisdiction, concluding that the cause of action it set forth did not come within § 301(a). The Court of Appeals for the Third Circuit reversed, 117 F. 3d 119 (1997); we granted certiorari, 522 U. S. 979 (1997).

## II

Section 301(a) of the Labor Management Relations Act, 1947, provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat. 156, 29 U. S. C. § 185(a).

By its terms, this provision confers federal subject-matter jurisdiction only over "[s]uits for violation of contracts." The Union, and the Government in an *amicus* brief filed in support of the Union, contend that this includes suits alleging that a contract is invalid. Focusing on the breadth of the word "for," the Government argues that § 301(a) "is broad enough to encompass not only a suit that 'alleges' a violation of contract, but also one that concerns a violation of contract, or is intended to establish a legal right to engage in what otherwise would be a contract violation." Brief for United States as *Amicus Curiae* 11 (footnotes omitted). It is true enough, as the Government points out, that one of the numerous definitions of the word "for" is "[i]ndicating the end with reference to which anything acts, serves, or is done; . . . . As a preparation towards, against, or in view of; having as goal or object; . . . . With the purpose or object of; . . . with a view to." Webster's New International Dic-

union to sue in federal court to declare a collective bargaining agreement voidable in the absence of any alleged violation of the agreement."

tionary 984 (2d ed. 1950) (def. 2). Even applying that definition, the Government must make a considerable stretch to bring the present case within it. This suit obviously does not have as its "purpose or object" violation of any contract. The most the Government can assert (and it falls short of the definition) is that the suit seeks to facilitate *"what otherwise would be . . .* contract violation[s]." Brief for United States 11 (emphasis added).

More basically, however, it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal* v. *United States,* 508 U. S. 129, 132 (1993). Accord, *Cohen* v. *de la Cruz, ante,* at 220. It is not the meaning of "for" we are seeking here, but the meaning of "[s]uits for violation of contracts." That phrase cannot possibly bear the meaning ascribed to it by the Government. No one, for example, would describe a corporation's harassing lawsuit against a competitor as a "suit for unfair competition," even though that is precisely its "goal or object." In the same vein, a suit "for violation of a contract" is not one filed "with a view to" a future contract violation (much less to facilitate action that "otherwise would be" a contract violation). It is one filed *because a contract has been violated,* just as a suit "*for* unfair competition" is one filed because unfair competition has occurred. In this context, the word "for" has an unmistakably backward-looking connotation, *i. e.,* "[i]ndicating the cause, motive, or occasion of an act, state, or condition; hence, because of; on account of; in consequence of; as the effect of; for the sake of; as, cursed himself *for* showing leniency." Webster's New International Dictionary 984 (2d ed. 1950) (def. 7). "Suits for violation of contracts" under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated.

This does not mean that a federal court can never adjudicate the validity of a contract under § 301(a). That provision

simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense. See *Kaiser Steel Corp.* v. *Mullins,* 455 U. S. 72, 85–86 (1982). Similarly, a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid. But in these cases, the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate "[s]uits for violation of contracts."

This would seem to be the end of the matter. Here, the Union neither alleges that Textron has violated the contract, nor seeks declaratory relief from its own alleged violation. Indeed, as far as the Union's complaint discloses, both parties are in absolute compliance with the terms of the collective-bargaining agreement. Section 301(a) jurisdiction does not lie over such a case.

The Union, however, asserts that the outcome is altered by the fact that it seeks relief pursuant to the Declaratory Judgment Act, 28 U. S. C. § 2201.[2] It argues that in order to determine whether § 301(a) jurisdiction lies over the declaratory-judgment aspect of its suit, we must look to the character of the threatened action to which its suit would interpose a defense, which in this case would be Textron's action for breach of the collective-bargaining agreement. It relies on our decision in *Skelly Oil Co.* v. *Phillips Petroleum*

---

[2] The Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U. S. C. § 2201(a).

*Co.*, 339 U. S. 667 (1950), which held that a declaratory action asserting a federal defense to a nonfederal claim was not a "civil actio[n] arising under the . . . laws . . . of the United States" within the meaning of the federal-question jurisdiction statute, 28 U. S. C. § 1331. This argument makes several assumptions that we do not think can be indulged.

First, it assumes that facts which were the *converse* of *Skelly Oil*—*i. e.*, a declaratory-judgment complaint raising a *nonfederal* defense to an anticipated *federal* claim—*would* confer § 1331 jurisdiction. That is not clear. It can be argued that anticipating a federal claim in a suit asserting a nonfederal defense no more effectively invokes § 1331 jurisdiction than anticipating a federal defense in a suit asserting a nonfederal claim. (The latter, of course, is barred by the well-pleaded-complaint rule, see *Rivet* v. *Regions Bank of La.*, 522 U. S. 470, 475 (1998).) Perhaps it was the purpose of the Declaratory Judgment Act to permit such anticipation, see *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 19, n. 19 (1983), but *Skelly Oil* did not present that issue, and some of its language suggests that the declaratory-judgment plaintiff must himself have a federal claim.[3] No decision

---

[3] "Prior to [the Declaratory Judgment] Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction . . . . The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked." *Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667, 671–672 (1950).

"[I]t has been settled doctrine that where a suit is brought in the federal courts 'upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character.' But 'a suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws.'" *Id.*, at 672, quoting *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454, 464 (1894).

of this Court has squarely confronted and explicitly upheld federal-question jurisdiction on the basis of the anticipated claim against which the declaratory-judgment plaintiff presents a nonfederal defense; and neither the Union nor the Government cites such a decision by any other federal court.[4]

Second, the Union's *Skelly Oil* argument assumes that what would suffice to sustain a declaratory-judgment action premised on § 1331 federal-question jurisdiction would suffice to sustain a declaratory-judgment action brought under § 301(a). But the language of the two provisions is quite different. Whereas § 1331 authorizes "civil actions arising under the . . . laws . . . of the United States" (which can arguably embrace a civil action presenting a defense to a federal claim), § 301(a) authorizes only "[s]uits for violation of contracts."

But assuming (without deciding) that the converse of *Skelly Oil* confers § 1331 jurisdiction, and that what suffices for § 1331 suffices for § 301(a) as well, the Union's prayer for a declaration that the collective-bargaining agreement was voidable is in our view inadequate to save the present suit, because it does not, and as far as the record shows it never did, present a case or controversy giving the Union access to federal courts. That is obviously so at the present time, because the collective-bargaining agreement, whether voidable or not, has expired; the only question is whether the parties had any concrete dispute over the contract's voidability at the time the suit was filed.

---

[4] In *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1 (1983), we observed, with seeming approval, that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Id.*, at 19. The cases brought forward to support that observation, however, were suits by alleged patent infringers to declare a patent invalid, which of course themselves raise a federal question. See *id.*, at 19, n. 19.

We see no evidence that they did. To be sure, Textron vigorously contested the complaint's allegations of fraud that are *the asserted cause* of the claimed voidability as well as of the claimed damages; but that is no indication that Textron had any interest in defending the binding nature of the contract. Indeed, there is not even any indication that the *Union* had a concrete interest in establishing the *non*binding nature of the contract. This was not. (as one might have expected in a declaratory-judgment suit of this sort) a situation in which the Union had threatened to strike over the contracting-out, and Textron had asserted that a strike would violate the collective-bargaining agreement. The Union never threatened to strike. As far as appears, the company that had just eliminated the work of half its Williamsport employees would have been perfectly willing to be excused from a contract negotiated when the Union was in a stronger bargaining position, and the Union had no intent or disposition to exercise a theoretical option to avoid a contract that was better than what it could negotiate anew. The fact that the fraud damages claim, if successful, would establish a voidability that (as far as appears) no one cared about, does not make the question of voidability a "case of actual controversy," 28 U. S. C. § 2201, over which federal courts have § 301(a) jurisdiction. "The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision [Art. III, § 2] and is operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 239–240 (1937). See also *Public Serv. Comm'n of Utah* v. *Wycoff Co.,* 344 U. S. 237, 242–243 (1952).

\* \* \*

Because the Union's complaint alleges no violation of the collective-bargaining agreement, neither we nor the federal courts below have subject-matter jurisdiction over this case

under § 301(a) of the Labor Management Relations Act. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE STEVENS, concurring.

If the Union's allegations are true, it seems clear that petitioner violated its statutory duty to bargain in good faith. Our conclusion that the federal courts do not have § 301(a) jurisdiction over the Union's suit therefore comports with the important goal of protecting the primary jurisdiction of the National Labor Relations Board in resolving disputes arising from the collective-bargaining process. As the Court has long recognized, "[i]t is implicit in the entire structure of the [National Labor Relations] Act that the Board acts to oversee and referee the process of collective bargaining." *H. K. Porter Co.* v. *NLRB*, 397 U. S. 99, 107–108 (1970). "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules." *Garner* v. *Teamsters*, 346 U. S. 485, 490 (1953). The rules governing disputes that arise out of the collective-bargaining process are within the special competence of the National Labor Relations Board. Cf. *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236, 245 (1959). The fact that the Board undoubtedly has more expertise in the collective-bargaining area than federal judges provides an additional reason for concluding that Congress meant what it said in § 301(a) and for rejecting the Union's and the Government's broad reading of the "[s]uits for violation of contracts" language.

JUSTICE BREYER, concurring in part and concurring in the judgment.

I agree with the first five pages of the Court's opinion. See *ante*, at 654–658. I also agree with the Court that the Union failed to show (or even to allege) a significant likelihood that it would strike and that Textron would then sue it

for breach of its collective-bargaining agreement. See *ante*, at 661. I write separately, however, because this factual circumstance has more significance than the Court's opinion suggests. See *ante*, at 658–660. Indeed, in my view, if the Union had shown that a strike and consequent employer breach-of-contract lawsuit were imminent, then the Declaratory Judgment Act, 28 U. S. C. § 2201, would have authorized the District Court to adjudicate this controversy. Unlike the Court, I would not leave the matter undecided.

My conclusion flows from the following two legal propositions: *Proposition One.* The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations of any interested party" as long as there exists an "actual controversy" that is "within [the] jurisdiction" of a federal court. 28 U. S. C. § 2201(a).

*Proposition Two.* Section 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U. S. C. § 185(a), permits a federal court to adjudicate *both* an employer's claim that a contract's (*i. e.*, a collective-bargaining agreement's) "no strike" clause forbids an ongoing strike *and* the related Union defense that it is free to strike because the contract itself is invalid. See *ante*, at 657–658; Brief for Petitioner 29 ("[B]efore enforcing an agreement, courts must adjudicate affirmative defenses such as fraud . . . in the collective bargaining process"); Brief for United States as *Amicus Curiae* 13–14; *Kaiser Steel Corp.* v. *Mullins*, 455 U. S. 72, 85–86 (1982).

*Proposition One* means that the Declaratory Judgment Act gives a federal court the power to declare the "rights" and "legal relations" of both union and employer where the "controversy" described in *Proposition Two* is "actual," *e. g.*, where the strike and consequent employer lawsuit is imminent. Moreover, this Court has pointed out that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant [such as the employer here] brought a coercive

action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 19 (1983). Hence the characterization of the Union's "no valid contract" claim as a "defense" that could not *independently* support § 301 jurisdiction is beside the point. See *ibid.*; *Public Serv. Comm'n of Utah* v. *Wycoff Co.*, 344 U. S. 237, 248 (1952) (in declaratory judgment context, "it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court"); see also 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2767, p. 741 (2d ed. 1983) ("federal nature of the right claimed not to exist is crucial to jurisdiction").

This conclusion draws support in principle from the Declaratory Judgment Act's basic objective, which is "to permit adjudication of either party's claims of right." *Franchise Tax Board, supra,* at 19, n. 19. And the conclusion draws support in practice from the prevalence in the lower courts of "reverse" declaratory judgment actions that focus upon a party's likely defense, including actions found in contexts such as that now before us. See, *e. g.*, *El Paso Bldg. & Constr. Trades Council* v. *Associated Gen. Contractors of Am.*, 376 F. 2d 797, 799–800 (CA5 1967) (union threatened to strike, then filed declaratory judgment action for determination of contract's validity, and court took jurisdiction under § 301); *McNally Pittsburg, Inc.* v. *International Assn. of Bridge, Structural, and Ornamental Iron Workers*, 812 F. 2d 615 (CA10 1987) (where actual controversy existed with union, employer allowed to seek prospective declaration that contract was invalid); *Mobil Oil Corp.* v. *Oil, Chemical and Atomic Workers Int'l Union, AFL–CIO*, 483 F. 2d 603 (CA5 1973) (same), rev'd on other grounds, 504 F. 2d 272 (1974) (en banc). Cf. *Walker Process Equipment, Inc.* v. *Food Machinery & Chemical Corp.*, 382 U. S. 172, 176 (1965) (one likely to be sued for patent infringement "need not await the

filing of a threatened suit by the patentee; the validity of the patent may be tested under the Declaratory Judgment Act").

I cannot find any reason for an exception that would forbid "reverse" declaratory judgment actions in labor law contexts such as this one. To the contrary, this Court has suggested that the availability of declaratory judgment actions furthers the LMRA's basic purposes. See *Textile Workers* v. *Lincoln Mills of Ala.*, 353 U. S. 448, 454–455 (1957) (§ 301 designed to promote "industrial peace" by "provid[ing] the necessary legal remedies"); *id.*, at 455–456 (quoting from floor statement of Representative Barden, 93 Cong. Rec. 3656–3657 (1947), that "the section . . . contemplates not only the ordinary lawsuits for damages but also such other remedial proceedings, both legal and equitable, as might be appropriate . . . [including a suit] under the Declaratory Judgments Act in order to secure declarations from the Court of legal rights under the contract"); *Smith* v. *Evening News Assn.*, 371 U. S. 195, 199 (1962) ("[Section] 301 is not to be given a narrow reading"). And the Government, in an *amicus curiae* brief, tells us that such an action would not interfere with the National Labor Relations Board's administration of federal labor law. See Brief for United States as *Amicus Curiae* 27 ("The Board . . . has concluded in this and other cases . . . that a suit under Section 301(a) to declare a contract voidable based on fraud in the inducement does not unduly intrude upon its authority").

Thus Declaratory Judgment Act jurisdiction would lie in a case like this one, *provided, however*, that the declaratory judgment plaintiff demonstrates an "actual controversy." 28 U. S. C. § 2201(a); *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 239–240 (1937). The Union failed to make any such showing here, and for that reason I agree with the Court's ultimate conclusion.