**BEDROCK SERVICES, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NOS. 238, 342 AND 495; and Atlantic Coast Chapter, National Electrical Contractors Association, Defendants.**

No. CIV.1:02 CV 289.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 29, 2003.

Glen C. Shults, Law Offices of Glen C. Shults, Asheville, NC, for Bedrock Services.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, for Intern. Brotherhood of Elec. Workers Local Union Nos. 238, 342 and 495.

Gary L. Lieber, Katherine Brewer, Schmeltzer, Aptaker & Shepard, P.C., Washington, DC, for Atlantic Coast Chapter, Nat. Elec. Contractors Ass'n.

## MEMORANDUM OF OPINION AND ORDER OF DISMISSAL

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiff's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motion to dismiss to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review to those portions of the Recommendation to which specific objections were filed, the undersigned dismisses this action. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

### I. PROCEDURAL HISTORY

On March 27, 2002, Plaintiffs Southern Electrical Health Fund (SEHF), Carolina Electrical Workers Retirement Fund (Retirement Fund), National Electrical Benefit Fund (Benefit Fund), Carolina Electrical Workers Joint Apprenticeship & Training Fund (Training Fund), International Brotherhood of Electrical Workers Local Union No. 238 (Local 238), National Labor Management Cooperation Committee (Committee), and Board 63 Collection Account Trust (Board 63) (collectively the Tennessee Plaintiffs) filed suit against Bedrock Services (Bedrock) in the United

States District Court for the Middle District of Tennessee. Plaintiff Bedrock Services' Memorandum of Law in Response to the Court's Order dated August 18, 2003 ["Bedrock's Memorandum"], filed August 28, 2003, at 2. SEHF is an employee welfare benefit plan administered from Tennessee. *Id.* The Retirement Fund is an employee pension fund administered from Georgia; the Benefit Fund is an Employees' Retirement Income Security Act (ERISA) plan administered from Maryland; and the Training Fund is administered from North Carolina. *Id.* Local 238 is a local union of the International Brotherhood of Electrical Workers with offices in Asheville, North Carolina. *Id.* The Committee is a joint labor-management organization in Washington, D.C. *Id.* Finally, Board 63 collects trust fund contributions and is administered from Virginia. *Id.*

Bedrock is a sole proprietorship engaged in electrical and data contracting from its offices in Fletcher, North Carolina. Complaint for Declaratory Relief, filed December 16, 2002, at 1. It is an employer within the meaning of the Labor Management Relations Act, 29 U.S.C. § 185(a) (LMRA). *Id.* In the Tennessee action, the Tennessee Plaintiffs sought to recover unpaid trust fund contributions, union dues, and assessments based on the provisions of an Inside Construction Agreement (Agreement) in effect from December 1, 2000, through November 30, 2002, which Bedrock admits bound it during that time. Bedrock's Memorandum, *supra.* The Tennessee Plaintiffs alleged claims pursuant to ERISA predicated on the provisions of the Agreement, characterized as a pre-hire collective bargaining agreement, which imposed on Bedrock an obligation to pay contributions to the Tennessee Plaintiffs on behalf of covered employees as well as to deduct Union dues and assessments from employees' paychecks. *See* Memorandum and Order, *Southern Electrical Health Fund v. Bedrock Services,* Case No. 3:02cv0309 ["Memorandum and Order"], filed July 24, 2003 (M.D.Tenn., Echols, J.), *attached to* Notice of Filing by IBEW Local Nos. 238, 342 and 495, filed July 31, 2003; Exhibit A, *attached to* Affidavit of Glen C. Shults in Support of Plaintiff Bedrock Services' Opposition to Defendants' Motions to Dismiss the Complaint, filed March 3, 2003. The Tennessee action was filed after Bedrock became delinquent in these obligations.

The Tennessee Plaintiffs sought a permanent injunction against Bedrock from future violations of ERISA, the Agreement and agreements requiring fund contributions, and a judgment in the amount of delinquent contributions plus liquidated damages. Memorandum and Order, at 3. Bedrock never answered the complaint and on May 20, 2002, the Clerk of Court entered default against Bedrock. *Id.* On June 5, 2002, the District Court entered a temporary injunction against Bedrock requiring it to submit contribution reports so the Tennessee Plaintiffs could ascertain the amount owed by Bedrock. *Id.* Bedrock also ignored the injunction. *Id.* On August 14, 2002, the Tennessee Plaintiffs moved for an order to show cause why Bedrock should not be held in contempt of court and the District Court scheduled a hearing for November 18, 2002, which was rescheduled for December 20, 2002. *Id.,* at 3–4. On December 13, 2002, Bedrock moved to continue the hearing and its motion was granted. Bedrock also filed a motion to set aside the entry of default and to transfer venue to this District. Simultaneously, Bedrock filed the complaint in this action in this Court on December 16, 2002. *Id.*

In this action, Bedrock has sued Local 238 as well as two other local unions of the IBEW representing workers in Winston Salem and Wilmington, North Carolina.

Complaint, *supra*. In addition, Bedrock sued the Atlantic Coast Chapter, National Electrical Contractors Association (NECA), which is a multi-employer bargaining association located in Virginia. *Id.*, at 2. In this action, Bedrock alleges and admits that it entered into the Agreement discussed above which was effective from December 1, 2000, through November 30, 2002. *Id.*, at 4. The complaint also contains the following allegations:

> The terms of the Inside Construction agreement required [Bedrock] to make contributions to various welfare benefit plans or employee benefit plans, as defined in the [ERISA].... [S]uch plans are primarily funded by contributions remitted from participating employers pursuant to collective bargaining agreements with local unions of the [IBEW].... [T]hese plans are jointly administered by the [IBEW] and the [NECA]. *The plans to which Bedrock Services was required to make contributions included the Southern Electrical Health Fund, Carolinas Electrical [Workers] Retirement Fund, National Electrical [Benefit] Fund, and Carolinas Electrical Workers Joint Apprenticeship & Training Fund* .... In or about February 2002, [Bedrock] became delinquent in its monthly payments to the Funds ....

*Id.*, at 5 (emphasis added). In addition, Bedrock acknowledged in the complaint that certain payments which were required under the Agreement to be made to the *National Labor Management Cooperation Committee* and *Board 63 Collection Account Trust* had not been made. *Id.* Bedrock claimed that it repudiated the Agreement on May 28, 2002; and, while acknowledging the prior existence of the Tennessee action, sought a declaratory judgment that its repudiation was valid. *Id.*, at 7. Bedrock also alleged that a successor agreement had been negotiated by the Locals with NECA. *Id.*, at 4. For declaratory relief, Bedrock sought a declaration that it lawfully repudiated the Agreement; that it was not obligated to comply with the terms of the successor agreement; and that no action could be taken to enforce the Tennessee judgment. In February 2003, the Defendants in this action moved to dismiss.

In the interim, the Tennessee Plaintiffs had moved in January 2003 for a permanent injunction. While the motions to dismiss in this action were under advisement, the Tennessee Court entered a memorandum on July 24, 2003, which denied Bedrock's motion to set aside the entry of default, denied Bedrock's motion to transfer venue to this Court, and granted the Tennessee Plaintiffs' motion for a permanent injunction. *See,* Memorandum and Order, *supra.* By virtue of that decision and the Order entered thereon, Bedrock is "permanently enjoined from withholding contributions, reports, and payments required under the pre-hire collective bargaining agreement and [is] directed to pay the contributions owed to the Plaintiff Funds after April 2002, as well as [to] submit monthly payroll reports and corresponding contributions, and make payments to Plaintiffs as required by the pre-hire collective bargaining agreement." *Id.*, at 17.

## II. DISCUSSION

 Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication. The doctrine of *res judicata* encompasses two concepts: (1) claim preclusion and (2) issue preclusion, or collateral estoppel. The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment in the prior

action bars litigation "not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.". . . [C]laim preclusion requires only a valid and final judgment.

*Orca Yachts, L.L.C. v. Mollicam, Inc.,* 287 F.3d 316, 318 (4th Cir.2002) (quoting *In re Varat Enter., Inc.,* 81 F.3d 1310, 1315 (4th Cir.1996)). In order to establish this defense, there must be " '(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.' " *Jones v. S.E.C.,* 115 F.3d 1173, 1178 (4th Cir.1997) (quoting *Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991)).

■ The first issue is whether the entry of default and the grant of a default judgment based thereon constitutes a final judgment on the merits. " 'A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata,* in the absence of fraud or collusion, even if obtained upon default.' " *Orca, supra,* at 319 (quoting *Morris v. Jones,* 329 U.S. 545, 550–51, 67 S.Ct. 451, 91 L.Ed. 488 (1947) (quoting *Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1929))). The Tennessee District Court entered both a Memorandum and Order and in the Order, granted a permanent injunction. Moreover, throughout the decision, the Court noted that Bedrock had failed to show a meritorious defense. The record does not disclose whether a separate judgment was entered; however, the Order, which does not contain facts, law and reasoning but which does specify the relief granted and the terms and conditions of the permanent injunction, has been entered on the docket of the Clerk of Court. *See, e.g., Kentuckians for the Commonwealth, Inc. v. Rivenburgh,* 317 F.3d 425, 438 (4th Cir.2003) ("The judgment of the district court, as

contained in its two orders of May 8 and June 17, 2002 . . . ."); Fed.R.Civ.P. 54(a) (" 'Judgment' as used in these rules includes . . . any order from which an appeal lies."); Fed.R.Civ.P. 58(a)(1) ("Every judgment . . . must be set forth on a separate document[.]" ); Fed.R.Civ.P. 79(a). Therefore, a valid judgment on the merits has been entered by the Tennessee Court.

■ As to identity of the causes of action, Bedrock argues the Tennessee action was essentially one for "collection" and the issues of whether the Agreement had been repudiated by Bedrock and whether it was obligated under the terms of a successor Agreement were not reached. "The only 'claim' decided by the Tennessee court was whether the entry of default should be set aside." Bedrock's Memorandum, at 8. There is no question, however, that if Bedrock had appeared in that action, these two issues could have been asserted and litigated. *See, e.g., Int'l Union of Operating Engineers–Employers Const. Indus. Pension, Welfare & Training Trust Funds v. Karr,* 994 F.2d 1426, 1429 (9th Cir.1993) (Employee benefit trust funds' claims to compel audit and recover payments from employer were barred by *res judicata* because not alleged in earlier litigation to collect delinquent contribution payments owed under the trust agreement.). In fact, in its motion to set aside the default in the Tennessee action, Bedrock argued the issue of repudiation, noting that in the Sixth Circuit, no such defense would be recognized, while the Fourth Circuit would acknowledge such a defense. The Tennessee Court noted that "if [Bedrock] made this claim in a court in the Sixth Circuit, it would be dismissed for failure to exhaust the contractual procedure for dispute resolution[.]" Memorandum and Order, *supra,* at 8.

■ The issue then is whether a litigant has a full and fair opportunity to litigate a

cause of action when the jurisdiction in which the action is brought does not recognize that cause of action. "The requirement that a party have a full and fair opportunity to litigate an issue before *res judicata* may apply relates to the procedural opportunity rather than to a judicial determination of the merits of the issue." *Lim v. Central DuPage Hosp.*, 972 F.2d 758, 763 (7th Cir.1992). "A party faced with a statutory or precedential impediment to an asserted theory of liability, claim for relief, or defense must challenge that legal barrier in the trial court and if necessary through the appellate process." 18 *Moore's Federal Practice*, § 131.21[2] (3rd ed.2001); *accord, Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1258 (10th Cir.1997) ("[U]ncertainty over whether a federal court would have exercised pendant jurisdiction does not justify a conclusion that a plaintiff was denied a full and fair opportunity to litigate a claim." Plaintiff was obligated to raise the claim and pursue it.). "Not that all the arguments are the same, but for purposes of *res judicata* a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy, and they are the same in the two suits." *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir.2001) (internal citations omitted).

> [T]he fact that [Bedrock's defense] was not actually litigated in [Tennessee] does not affect [the] decision to grant [the] motion to dismiss.... [W]hile issue preclusion applies only when an issue has been actually litigated, claim preclusion requires only a valid and final judgment. In this case, the [Tennessee] court's dismissal of [Bedrock's motion to vacate default and entry of default judgment] was a final judgment. Accordingly, the rules of claim preclusion preclude [Bed-

rock] from [asserting] the same cause of action before this court.

*Orca*, 287 F.3d at 319–20.

The final inquiry is whether there is an identity of the parties or their privies. Local 238 was a plaintiff in the Tennessee action and is a defendant here. However, Bedrock maintains that because it added in this action Defendants IBEW Locals 342 and 495, representing workers in Winston Salem and Wilmington, there is no identity of parties.

 "[P]reclusion cannot be applied to an action by or against a person who was not a party to the prior adjudication." 18 *Moore's Federal Practice*, § 131.40[1]. Nonetheless, Bedrock "cannot avoid the bar of *res judicata* by bringing in additional [defendants]. The defense of *res judicata* is not avoided by joinder." *Bethesda Lutheran Homes, supra* (internal citations omitted). The allegations of the complaint, moreover, are telling:

> The terms of the Inside Construction Agreement required [Bedrock] to make contributions to various welfare benefit plans or employee benefit plans, as defined in the [ERISA].... [S]uch plans are primarily funded by contributions remitted from participating employers pursuant to collective bargaining agreements with local unions of the [IBEW].... [T]hese plans are jointly administered by the [IBEW] and the [*NECA*]. *The plans to which Bedrock Services was required to make contributions included the Southern Electrical Health Fund, Carolinas Electrical [Workers] Retirement Fund, National Electrical [Benefit] Fund, and Carolinas Electrical Workers Joint Apprenticeship & Training Fund* .... In or about February 2002, [Bedrock] became delinquent in its monthly payments to the Funds ....

.　　.　　.　　.　　.

On March 27, 2002, the Funds, *Local 238*, to which certain dues and assessments are required under the Inside Construction Agreement, the *National Labor Management Cooperation Committee*, to which certain payments are required under the [Agreement], and *Board 63 Collection Account Trust*, which administers employer payments to the Funds and to which certain payments are required under the [Agreement], filed suit against [Bedrock] . . . . Complaint, at 5 (emphasis added). The Complaint also alleges that Bedrock provides its contracting services "*exclusively within counties in western North Carolina*, and in the upstate area of South Carolina, and in no other states." *Id.*, at 3 (emphasis added). There are no allegations that Bedrock is delinquent in relation to any funds owed to IBEW Locals 342 and 495; indeed, the complaint alleges that "[o]n or about May 20, 2002, in response to the filing of the aforementioned civil action, Bedrock [ ] submitted to the Funds and the other [Tennessee] plaintiffs the contractually-required payments for the months of February, March and April 2002." *Id.*, at 6. The only allegation is that Bedrock performs work exclusively within the counties of Western North Carolina which fall within the counties assigned to Local 238. Exhibit B, Inside Construction Agreement, *attached to* Complaint, at 8. With the exception of these two Locals, there is a complete identity of parties in both actions.

■ The "newly added" Defendants appear to lack standing, having no stake in the litigation. *Bethesda Lutheran Homes*, *supra*. "[T]he naming of additional parties does not eliminate the *res judicata* effect of a prior judgment 'so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation.'" *United States ex rel., Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 249 (9th Cir.1992) (quoting *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175–76 (7th Cir.1970)). "While the parties to the federal action may be nominally different from those in the [Tennessee] action, they are in effect the same parties." *McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563, 1566 (11th Cir.1987) (citations omitted). Because Locals 342 and 495 were also parties to the Agreement, Bedrock named them as defendants in this action even it has not alleged that any contributions which should have paid on their behalf were not made. There is not even an allegation that Bedrock ever employed members of Locals 342 and 495. They are either nominal parties or were named as parties in an attempt to avoid the application of *res judicata*.

■ The undersigned finds that this action is barred by the doctrine of *res judicata*. However, the Court also finds that the motions to dismiss for lack of subject matter jurisdiction should be granted. As discussed *infra*, Bedrock admits that it became delinquent in February 2002 under the terms of the Agreement but alleges that on May 20, 2002, it made the required payments for February, March and April 2002. Complaint, at 6. On May 28, 2002, Bedrock repudiated the Agreement. *Id.* The relief sought in this action is (1) Bedrock was not obligated to comply with the Agreement at any time after the repudiation date; (2) Bedrock is not obligated to comply with the successor agreement; and (3) the Defendants be directed to cease any collection activities pursuant to the Tennessee District Court's Judgment.

Section 301(a) of the Labor Management Relations Act, 1947, . . . confers federal subject-matter jurisdiction only over "[s]uits for violation of contracts."

.　　.　　.　　.　　.

"Suits for violation of contracts" under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated.... [This] provision simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. *Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense. Similarly, a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.* But in these cases, the federal court's power to adjudicate the contract's validity is *ancillary to and not independent of,* its power to adjudicate "[s]uits for violation of contracts."

*Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agricultural Implement Workers of America, Int'l Union and Local 787,* 523 U.S. 653, 656–58, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (emphasis added) (citations omitted). Bedrock, however, does seek a declaration that it is not in violation of the contract; it has paid through April 2002 and seeks a declaration that thereafter, the contract is invalid. This suit was not "filed *because a contract has been violated*" but because Bedrock has determined it is invalid and seeks a declaration of the same. *Id.,* at 657, 118 S.Ct. 1626; *accord, Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm. v. Troha,* 328 F.3d 325, 329 (7th Cir.2003). "[F]ederal jurisdiction does not exist solely by virtue of the fact that this case implicates a declaratory judgment suit challenging the validity of a federally regulated collective bargaining agreement." *United Food & Commercial Workers Union, Local 1564 v.*

*Albertson's, Inc.,* 207 F.3d 1193, 1196 (10th Cir.2000). "That is, [Bedrock] cannot use the [Tennessee] action by the Funds to 'bootstrap' its claim of contract invalidity against Local [238] into Federal court." *Hanley v. Lobster Box Restaurant, Inc.,* 35 F.Supp.2d 366, 369 (S.D.N.Y.1999).

Finally, since this Court does not have jurisdiction in any event, it may not transfer the action in accordance with the Defendants' motions.

## III. ORDER

IT IS, THEREFORE, ORDERED that this action is hereby **DISMISSED** on the grounds of *res judicata;* and

IT IS FURTHER ORDERED that the Defendants' motions to dismiss for lack of subject matter jurisdiction are hereby **GRANTED;** and

IT IS FURTHER ORDERED that the Defendants' motions to transfer are hereby **DENIED.**