In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4468

STEVENS CONSTRUCTION CORP.,

*Plaintiff/Counter-Defendant-Appellee*,

*v.*

CHICAGO REGIONAL COUNCIL OF CARPENTERS,
UNITED BROTHERHOOD OF CARPENTERS
& JOINERS OF AMERICA,

*Defendant/Counter-Plaintiff-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-C-1144—**Thomas J. Curran**, *Judge.*

ARGUED MAY 30, 2006—DECIDED SEPTEMBER 19, 2006

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Stevens Construction Corpora-
tion was, for a number of years, a member of the Associated
General Contractors of Greater Milwaukee, Inc., (AGC), one
of several employers' associations that bargain collectively
with the Chicago Regional Council of Carpenters. In 2003,
prior to the expiration of a 1999-2004 agreement between
the AGC and the Carpenters (the "1999 CBA"), Stevens
withdrew from the AGC. The AGC subsequently negotiated

a new agreement with the Carpenters for the years 2004-2008 (the "2004 CBA"). The union requested that Stevens give its assent to be covered by this new agreement, but the company refused.

After the new agreement went into effect, the Carpenters filed a grievance against Stevens, alleging that it was violating the 2004 CBA with regard to certain carpentry work done by its employees. In response, Stevens filed suit in federal court, seeking a declaratory judgment that it was not covered by the 2004 agreement and an injunction prohibiting the union from pursuing its grievance in arbitration. After a bench trial, the district court granted judgment for Stevens, concluding that since the company had properly terminated the 1999 CBA, it was not bound by the 2004 agreement. In this appeal, the Carpenters contend that the district court erred by deciding the termination question instead of requiring Stevens to arbitrate the issue. Finding no error in the district court's judgment, we affirm.

**I**

In January 1999, Stevens gave written authority to the AGC to negotiate a collective bargaining agreement on its behalf with the Carpenters. The resulting agreement, the 1999 CBA, covered commercial carpentry work in Milwaukee, Waukesha, Washington, and Ozaukee counties in southeastern Wisconsin. In March 2003, while the 1999 CBA still remained in force, Stevens canceled its AGC membership. Stevens did not, however, notify the Carpenters of its withdrawal from the AGC at this time.

On February 10, 2004, the AGC provided notice to the Carpenters of its intention to negotiate a new collective bargaining agreement. (The 1999 CBA required a party who wished to terminate the agreement to give notice to the other side before February 28, 2004.) On March 4, 2004, the Allied Construction Employers Association (ACEA), another

signatory to the agreement, sent a letter to the union listing the companies for whom the ACEA and the AGC held bargaining authorization. The letter also noted that the associations no longer held bargaining authority for some companies who had given authorization during the 1999 to 2004 contract period and specifically listed those companies, including Stevens.

On June 1, 2004, the Carpenters and the employer associations reached a new agreement. The geographic scope of the agreement was expanded to cover Racine and Kenosha counties. On June 7, 2004, the Carpenters sent Stevens a letter requesting that it agree to be bound by the new 2004 CBA. The company declined to do so.

In October 2004, the Carpenters filed a grievance against Stevens, claiming that work it was doing in Caledonia, Wisconsin (which is in Racine County), violated the 2004 CBA. In response to the grievance, Stevens filed this suit, seeking a declaration that "it is not bound by the 2004 CBA, had no obligation to arbitrate the Grievance or to participate in any grievance-arbitration matters arising under or relating to the 2004 CBA," and a permanent injunction prohibiting the Carpenters from arbitrating the grievance. The Carpenters filed two counterclaims, seeking either to compel Stevens to arbitrate the termination of the 1999 agreement or, in the alternative, a declaratory judgment that Stevens was bound by the 2004 CBA based on its failure to terminate the 1999 agreement. The district court ruled for Stevens, and this appeal followed.

## II

The Carpenters' sole contention before this court is that the district court erred by reaching and deciding the termination issue rather than requiring Stevens to submit this question to arbitration. The union does not contest

the district court's resolution of the termination issue on the merits.

Section 301(a) of the Labor Management Relations Act of 1947, provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). As a general matter, § 301(a) applies only to "suits that claim a contract has been violated," not to "suits that claim a contract is invalid." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace, Agricultural Implement Workers of America, Int'l. Union*, 523 U.S. 653, 657-58 (1998). There is an exception to this general rule, however, for situations in which, "in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid." *Id.* at 658. In such cases, "a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid." *Id.*

The theory behind the Carpenters' grievance was that, by operation of the 1999 CBA's rollover provisions, Stevens's failure to terminate the 1999 agreement resulted in the company's automatically being bound by the 2004 CBA. The provisions of the 1999 CBA on which the Carpenters rely stated:

> Section 25.1. This Agreement shall be binding upon the parties, their successors and assigns, and shall continue in full force and effect until May 31, 2004 provided, however, that written notice of the proposed termination or modification of the contract, by the party desiring to terminate or modify the contract, shall be served upon the other party, on or before February 28th prior to the expiration date. . . .

> Section 25.2. Upon failure to meet with the other party for the purpose of collective bargaining upon service of the written notice referred to in Section 25.1, the party so failing to meet is to be deemed to have conceded the changes desired by the party present with respect to wage rates and conditions of employment for the new contract year.

The 1999 agreement also contained a dispute settlement provision stating that "in case of any disagreements between [the] parties over terms of this Agreement, the same shall be submitted to a Board of Arbitration." Based on this provision, the Carpenters argue that any dispute over whether or how the 1999 CBA's rollover provisions apply to Stevens must be settled in arbitration rather than in court.

Although we reiterate that the Carpenters do not challenge the merits of the district court's resolution of the termination issue, we note that we are somewhat mystified by the argument underlying the union's position. Even if the Carpenters were to prevail before an arbitrator on the factual question whether Stevens properly terminated the 1999 CBA, the only remedy the 1999 agreement appears to provide would be to bind Stevens to any contractual changes in "wage rates and conditions of employment." There is no suggestion that Stevens's failure to terminate would bind it to all the provisions of a new contract. Since the work that is the subject of the Carpenters' grievance is in Racine County, a location not covered by the 1999 CBA, it is unclear what relief an arbitrator could give the union.

On the assumption that there is some nuance we are missing, however, we return to the subject at hand. The district court disagreed with the Carpenters on both the question of the court's authority to decide the termination question and the merits of that issue. As to its authority, the court explained that since "[b]oth sides agree that

arbitration [of the union's grievance] is a matter of contract," the court was thus required "to determine whether or not there was a valid contract." The resolution of this question, of course, turned on whether Stevens was bound to the 2004 CBA by the rollover provisions of the 1999 CBA. Addressing the merits of this issue, the court concluded that there was no valid 2004 contract between the Carpenters and Stevens, because the Carpenters "became aware that [Stevens] would not be bound by whatever negotiations led to a new CBA" before the negotiations for the new agreement started. In reaching this conclusion, the court emphasized Stevens's cancellation of its AGC membership, the ACEA's March 4, 2004, notice to the Carpenters stating that the AGC did not hold bargaining authority for Stevens, and the Carpenters' own June 7, 2004, letter requesting that Stevens assent to the 2004 CBA. The court took the June 7 letter as "an indication that the carpenters did not consider that they had a binding contract with the plaintiff."

In contesting the district court's authority to decide the termination issue on appeal, the Carpenters rely heavily on the Supreme Court's decision in *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986). There the Court said that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims," and that, more generally, "where the contract contains an arbitration clause, there is a presumption of arbitrability." *Id.* at 649-50. Based on these and similar statements by the Supreme Court in a series of cases known as the *Steelworkers Trilogy*, see *id.* at 648, the union contends that "the district court in this case committed reversible error when it encroached on the jurisdiction of the Board of Arbitration by deciding the issue of whether Stevens terminated the 1999 CBA according to its terms."

One difficulty with the Carpenters' argument is that the "underlying claim" in the union's grievance against Stevens was not that the company failed to terminate the 1999 CBA, but that the company was not complying with the substance of the 2004 agreement. This is clear when one looks at the actual grievance notice, which said that "[i]t is the Union's position that Stevens Construction Corporation is in violation of the entire 2004-2008 Commercial Carpenters & Floor Coverers Agreement, to which you are bound." Although the Carpenters' counterclaims sought to compel Stevens to arbitrate the termination issue under the 1999 CBA, there is no mention in the record of any grievance based on the 1999 CBA that Stevens could have been ordered to arbitrate. For the same reason, the Carpenters' attempt to recharacterize their claim as a "post-expiration grievance"—that is, a "dispute [that], although governed by the contract, arises after its termination," *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 244 (1977)—is unavailing. A post-expiration grievance must be a grievance based on an agreement that has expired; the Carpenters filed no such grievance here.

It is of course true that the district court had to interpret the termination provisions of the 1999 CBA in order to decide whether the Carpenters' grievance was arbitrable under the 2004 agreement, and that this necessity created some tension with the presumption of arbitrability. But the rule that a court should not rule on the merits of a claim when deciding a question of arbitrability is not as absolute as the union would have us believe. As the Supreme Court explained in *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991), "[a]lthough doubts should be resolved in favor of coverage [by a contract's arbitration provisions], we must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement." *Id*.

at 209 (quotation and citation omitted). We have interpreted this statement to mean "that the rule that courts must decide arbitrators' jurisdiction takes precedence over the rule that courts are not to decide the merits of the underlying dispute." *Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993) ("If the court must, to decide the arbitrability issue, rule on the merits, so be it."). In a case like this one, where "[the] court's decision on arbitrability collapses into the same inquiry as [the] decision on the merits," *BCS Ins. Co. v. Wellmark, Inc.*, 410 F.3d 349, 352 (7th Cir. 2005) (quotation marks omitted), a court may need to touch on the merits of an issue that ordinarily would be decided in arbitration.

In sum, the Carpenters' grievance raised the issue of the arbitrability of the 2004 CBA. Therefore, despite the law's general presumption of arbitrability, the district court did not err by deciding the question whether Stevens had terminated the 1999 CBA, where this was necessary in order to resolve the question of the arbitrability of the grievance under the 2004 agreement.

### III

The district court's judgment is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*