[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 10-11961 & 10-13596
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:09-cv-00678-CLS

UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL UNION AFL-CIO-CLC,
LOCAL 320 INTERNATIONAL UNION OF OPERATING ENGINEERS,
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, LOCAL 1209,

Plaintiffs-Counter-Defendants-Appellees,

versus

WISE ALLOYS, LLC,

Defendant-Counter-Claimant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(June 9, 2011)

Before CARNES, PRYOR and COX, Circuit Judges.

COX, Circuit Judge:

Three unions representing different groups of employees of Wise Alloys, LLC ("Wise") sued Wise under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to enforce an arbitration award. The district court granted summary judgment in favor of the unions, enforcing the award. Wise appeals. We affirm.

## I. BACKGROUND

Wise operates an aluminum rolling mill and related facilities in Muscle Shoals and Sheffield, Alabama. The Plaintiffs are: the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC; the International Union of Operating Engineers, Local 320; and the United Brotherhood of Carpenters and Joiners, Local 1209 (collectively, "the Unions"). The Unions represent different groups of employees at Wise's Muscle Shoals and Sheffield plants. In November 2007, the Unions entered into materially identical collective bargaining agreements with Wise ("the Agreements"). The Agreements provide for a grievance procedure that includes final and binding arbitration.

Each Agreement includes identical language regarding a quarterly Cost of Living Adjustment ("COLA"). The COLA provision provides, in relevant part:

> **Section 2** Cost of Living Adjustment: Effective on each adjustment date, a cost-of-living-adjustment will be made to the current cost of living allowance. The cost of living allowance will be equal to 1¢ per hour for each full 0.3 of a point change in the Consumer Price Index calculation.
>
> **Section 3** Effective on each adjustment date, the cost-of-living allowance as determined above shall be applied exclusively to offset health insurance costs for hourly-rated employees. The cost-of-living adjustments under this paragraph shall not be applied to employees' hourly wage rates.

(Dkt. 1, Complaint at ¶ 10.) In negotiating these Agreements, the parties agreed to increase the employees' health insurance premiums from $2.50 to $20.00 per week with annual $5.00 increases up to $45.00 per week through November 2012. In connection with this change, the parties agreed that the COLA would be applied to offset these premiums. (Dkt. 1-1, Arbitrator's Award at 13.)

## II. FACTS AND PROCEDURAL HISTORY

In the months following ratification of these 2007-2012 labor agreements, a dispute arose over how the COLA was to be calculated. Wise was calculating the COLA on a weekly basis and maintained that the adjustment was only $0.08 per week. Wise maintained that the Agreements contained a typographical error and that the COLA should be calculated on a weekly basis, not on the hourly basis indicated in the Agreements. The Unions disagreed with Wise's calculations and complained that the adjustment should be calculated at $3.20 per week ($0.08 x 40 hours per

3

week), consistent with Section 2 of the COLA provision. The parties submitted this dispute to arbitration on July 23, 2008. All parties agree that this dispute was subject to binding arbitration. (Dkt. 1, Complaint at 4, ¶ 15; Dkt. 6, Answer, Affirmative Defense and Counterclaims at 5, ¶ 15.) The question for the arbitrator was whether the COLA should be calculated on an hourly basis or a weekly basis to offset the employees' health insurance premiums. In terms of dollars and cents, the dispute was whether Wise's contribution to the employees' share of health insurance premiums was $3.20 per week per employee, based on a workweek of 40 hours (the Unions' position) or $0.08 per week per employee (Wise's position).

At the arbitration hearing Wise asserted that there was a scrivener's error in drafting the COLA language of the Agreements, with the result that the words "per hour" were placed in the COLA clause rather than the correct words "per week." But Wise did not introduce any testimony or evidence at the hearing that a scrivener's error had occurred. (Dkt. 1-1, Arbitrator's Award, at 14-15.) Instead, in a post-hearing brief filed with the arbitrator, Wise asserted that the Unions collaborated to undermine Wise's scrivener's error defense by calling witnesses during the hearing who intentionally gave false testimony in an effort to convince the arbitrator to issue an award against Wise. Wise alleged in its post-hearing brief, as it does on this appeal, that the Unions also submitted a fabricated document alleged to have been

4

drafted in the presence of two Wise managers that "purported to reflect an admission by Wise management that the Unions' version of events was true and accurate, while, in fact, [a union representative had] created the document much later and solely for the purposes of carrying out the Unions' deceptive scheme." (Dkt. 6, Answer, Affirmative Defense, and Counterclaims at 10, ¶ 11.) Wise contends that, as a result of the Unions' deception and false testimony, the arbitrator ruled against Wise on November 21, 2008, ordering Wise to pay the COLA provision on an hourly, rather than weekly, basis.

Wise raised the issue of the Unions' deceit at arbitration. The arbitrator found it significant that Wise drafted the disputed COLA language and that Wise alone, rather than the Unions, failed to include language reflecting the alleged intent that the COLA payment be calculated on a weekly basis. Additionally, the arbitrator found Wise's position on the interpretation of the COLA provision untenable because he did not believe that the Unions would have agreed to increases in their contribution to their healthcare premiums (from $2.50 per week to $20.00 per week, eventually rising to $45.00 per week) had Wise's position on the COLA been correct. (Dkt. 1-1, Arbitrator's Award at 13.) Furthermore, the arbitrator concluded that the Unions' testimony was irrelevant given the unambiguousness of the relevant language of the Agreements:

5

[Wise's] Brief argued that the Union's deceit confirms that this was a "simple editing oversight." . . . Even if the Union gave testimony that was not believable or contradictory how does that change the scrivener error? . . . The language of the document is the most objective clue as to the meaning of the COLA clause. [Wise's chief negotiator's] testimony confirms this interpretation. He was asked whether the CBA states that COLA would be anything other than one cent per hour. His answer was; "The language is what the language is." . . . [He] admit[s] that the term weekly does not appear in the cost of living article. The Company had full opportunity to place in the COLA clause language that reflected its belief on how the clause was to be applied. It did not do so. . . . [The Company] drafted the language of the new COLA clause. The language in Article XXX Cost of Living Section 2 and Section 3 when read together mean that all hourly rated employees regardless of the number of hours worked are entitled to receive cost of living adjustment equal to $0.08 per hour to offset health insurance costs.

(Dkt. 1-1, Arbitrator's Award, at 15.) The arbitrator entered a written award in favor of the Unions on November 21, 2008. Wise did not seek to vacate the arbitrator's award but chose instead to ignore it. In January 2009, Wise wrote a letter to the Unions saying that it did not intend to comply with the award.

In April 2009, the Unions filed suit in the district court under § 301 of the LMRA alleging breach of contract by Wise in failing to abide by the award and seeking to enforce the arbitration award. Wise's first challenge to the award was filed on April 30, 2009, in its Answer. Its Answer included an affirmative defense alleging that the award was procured by fraud. The Answer also included counterclaims asserting state-law claims of fraud and conspiracy to defraud, based on Alabama law.

6

The court dismissed the state-law counterclaims as preempted by § 301. Later, Wise filed a motion to compel discovery. In its motion to compel, Wise sought to have Plaintiffs respond to Wise's interrogatories directed at the issue of fraud. The court denied Wise's motion. The court agreed with Plaintiffs that Wise was not entitled to the requested discovery because Wise had waived any fraud defense to the enforcement of the arbitration award. The court, borrowing from § 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12, held that Wise had only three months from the date of entry of the arbitrator's award to move to vacate the award and, because it had failed to do so, Wise was time-barred from raising the invalidity of the award as a defense to the Unions' action to enforce the award.

In April 2010, the court granted the Unions' motion for summary judgment and ordered Wise to comply with the arbitrator's award. Wise appeals.

### III. ISSUES ON APPEAL

Wise raises the following issues on appeal: whether the district court erred in ruling that § 301 of the LMRA peempted Wise's state-law counterclaims; whether the district court erred in denying Wise an opportunity to present its defense that "the award does not derive its essence from the labor agreements"; whether the court erred in holding that Wise was time-barred by a three-month statute of limitations from

7

raising its fraud defense to the arbitrator's award; and whether the court erred in denying Wise's motion to compel discovery on the issue of fraud.

## IV. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citation omitted). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted). Our de novo review includes a determination of whether the LMRA preempts Wise's state-law claims, as this is a question of law. *Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333, 1337 (11th Cir. 2004) (citation omitted). A district court's denial of a motion to compel discovery is reviewed for an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

## V. DISCUSSION

A. **The district court correctly found that § 301 of the LMRA preempted Wise's state-law counterclaims.**

An arbitration award pursuant to an arbitration provision in a collective bargaining agreement is treated as a contractual obligation that can be enforced through a § 301 lawsuit. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451, 77 S. Ct. 912, 915 (1957). Section 301 of the LMRA preempts a state-

law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S. Ct. 1877, 1885 (1988); *see also Bartholomew*, 361 F.3d at 1338 (citations omitted). In other words, state-law claims are preempted by § 301 "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract . . . ." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904, 1916 (1985). This preemption doctrine exists to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle*, 486 U.S. at 404, 108 S. Ct. at 1880. "[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409, 108 S. Ct. at 1883. The district court determined that the Unions' "alleged misrepresentations [are] inextricably intertwined with the interpretation of the language of the CBAs." (Dkt. 17, Memorandum Opinion and Order at 15.) Because we agree with the district court, we conclude that the court properly dismissed Wise's state-law counterclaims for fraud and conspiracy to defraud as preempted.

Wise argues that its state-law counterclaim alleging that the award was procured by fraud is independent from the parties' Agreements because its claim is not based on the substance of the written agreements. Wise argues that the Unions' witnesses testified that all parties intended the Agreements to be interpreted as written, and that the arbitrator relied upon this false testimony in ruling in favor of the Unions. As a result, Wise argues, its state-law fraud counterclaim does not depend upon the language of the Agreements or an interpretation of the language.

In support of its position, Wise argues that "[f]or purposes of establishing the fraud claim, the contracts do not even need to exist." (Appellant Br. at 34.) We disagree. As the district court noted, there is no way to evaluate the fraud counterclaim without determining the intended interpretation of the Agreements. The alleged false testimony of the Unions' witnesses about how the parties agreed the COLA was to be calculated directly relates to what the parties agreed to and a proper interpretation of the COLA sections of the Agreements. Because the resolution of Wise's state-law fraud claim "is substantially dependent upon analysis of the terms" of the Agreements, it is preempted. *Lueck*, 471 U.S. at 220, 105 S. Ct. at 1916.[1]

---

[1]Wise cites cases that it claims stand for the proposition that fraud claims are independent of collective bargaining agreements and, therefore, not subject to § 301 preemption. These cases are clearly distinguishable. Both *Textron Lycoming Reciprocating Engine Div. v. UAW*, 523 U.S. 653, 118 S. Ct. 1626 (1998) and *Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004) involve claims that allege fraud in inducing a party to sign a collective bargaining agreement. Because such claims do not turn on the terms of the agreement or require an interpretation of the agreement, the courts

Resolution of these state-law fraud claims would require, for example, consideration of the terms of the Agreements, and whether there was evidence to support a finding that the Agreements were the result of a scrivener's error. Indeed, the arbitrator's consideration of these matters informed his award in this case. Because Wise's fraud counterclaim is preempted, the district court correctly held that Wise's state-law counterclaim for conspiracy to commit fraud is also preempted. In Alabama, civil conspiracy is not a separate cause of action, but relies on the presence of an underlying tort. *Funliner of Alabama, LLC v. Pickard*, 873 So. 2d 198, 211 (Ala. 2003); *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006). In this case, because the underlying tort– fraud–is preempted, Wise's civil conspiracy claim is also preempted. Thus the district court properly dismissed the state-law counterclaims.

B. **The district court did not err in denying Wise an opportunity to present its "essence of the agreements" defense.**

Wise argues on appeal that "[r]egardless of the limitations period that may apply to a lawsuit seeking to vacate an arbitration award, Wise should be permitted to defend the Unions' action on the grounds asserted in its answer, wherein it

---

held that the fraud claims were insufficient to create federal subject matter jurisdiction under § 301. *Textron*, 523 U.S. at 657-58, 118 S. Ct. at 1628-30; *Alongi*, 386 F.3d at 726, 728.

expressly denied that the award derived its essence from the parties' labor agreements." (Appellant Br. at 29-30.) Proof that the award derived its essence from the parties' labor agreement, Wise argues, is an element of the Unions' claim seeking enforcement. Thus, wise argues, there should be no statute of limitations for this defense.

Essential to the enforcement of an arbitration award is that the arbitrator's interpretation of the collective bargaining agreement must be derived from the language of the agreement. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960). "[A] labor arbitrator's award does draw its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention . . . ." *Int'l Union of Dist. 50, Mine Workers of Am. v. Bowman Transp., Inc.*, 421 F.2d 934, 936 (5th Cir. 1970) (internal quotation and citation omitted). Wise's "failed to derive its essence" defense to the award is grounded solely on the assertion that the award was "premised on fraudulent testimony." (Appellant Br. at

16.) This defense is not an "essence of the agreements" defense. The award in this case is based upon the arbitrator's findings about what the parties agreed to and how that agreement should be interpreted. It clearly "derives its essence" from the parties labor agreements.

Wise's defense is more properly characterized as a federal common law defense based upon fraudulent procurement of the award. Any such defense is an affirmative defense. Whether federal common law would recognize a fraud defense of this kind in an action to enforce this award is an issue we need not decide.[2] We need only decide–and we do only decide–that any such affirmative defense is subject to the statute of limitations.

C. **The district court correctly concluded that Wise's fraud challenge to the arbitrator's award based on fraud was time-barred.**

The district court correctly held that Wise had only three months from the date of entry of the arbitrator's award to judicially challenge the award. And, because Wise failed to do so, its fraud defense was time-barred.

Wise's first legal challenge to the arbitrator's November 21, 2008, award was on April 30, 2009, in its Answer to this lawsuit seeking enforcement of the award.

---

[2]This defense is arguably an attempt at an end-run around the arbitrator's award in light of the fact that Wise presented basically the same defense to the arbitrator, and the arbitrator rejected it.

In § 301 arbitration cases, federal courts apply statutes of limitation to both suits and defenses. *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 650 (9th Cir. 1988). "Ordinarily, a party opposing an arbitration award must move to vacate the award or be barred from further legal action." *Sheet Metal Workers Int'l Ass'n, Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 482 (9th Cir. 1983) (citation omitted). Though this circuit has not addressed the issue, other circuits have held that a party's failure to move to vacate a § 301 arbitration award bars all defenses to the award. *See Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.*, 464 F.3d 93, 97 (1st Cir. 2006); *Standard Sheet Metal*, 699 F.2d at 483; *Serv. Emps. Int'l Union, Local 36 v. Office Ctr. Servs.*, 670 F.2d 404, 412 (3d Cir. 1982); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025, 1027 (7th Cir. 1980). The Seventh Circuit explained in *Jefferson Trucking* that statutes of limitations apply to defenses as well as suits because arbitration awards are themselves the creatures of statute, not common law. Consequently, the common law exception that excludes defenses from limitation periods does not control because "[i]t is settled that where by statute a right of action is given which did not exist by the common law, and the statute giving the right fixes the time period within which the right may be enforced, the time so fixed becomes a limitation on such right." *Id.* at 1027.

We adopt the view of our sister circuits and hold that a party adversely affected by an arbitration award in § 301 arbitration cases must challenge the award by judicial action within the statute of limitations or else be barred from raising any defenses to the award. An aggrieved party may not wait to attack the award in a subsequent suit to confirm the award after the statute of limitations has run. Having so held, we turn now to consideration of what is the applicable statute of limitations.

Section 301 of the LMRA governs suits to enforce or vacate an arbitration award arising out of a collective bargaining agreement.[3] *Bakery, Confectionery & Tobacco Workers Local Union No. 362-T v. Brown & Williamson Tobacco Corp.*, 971 F.2d 652, 654 (11th Cir. 1992). When faced with a motion to vacate under § 301, "[a] court may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement." *IMC-Agrico Co. v. Int'l Chem. Workers Council of the United Food & Commercial Workers Union,* 171 F.3d 1322, 1325 (11th Cir. 1999) (internal quotation marks and citation omitted). Section 301 does not contain an independent statute of limitations; consequently, courts considering requests to vacate an

---

[3]The statute of limitations applicable to a motion to vacate an arbitrator's award is different from the statute of limitations applicable to the filing of an action to enforce a contract. *See Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484, 489 (1st Cir. 1983) (explaining that because suits to modify or vacate an arbitrator's award "pose the principal threat to the finality of the award," a shorter statute of limitations for such motions is justified in order to force parties with objections to an award "to assert them in a timely fashion").

arbitrator's award have had to choose between applying the applicable state statute of limitations or the most analogous federal statute of limitations–in this case the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12.[4] *Compare Occidental Chem. Corp. v. Int'l Chem. Workers Union,* 853 F.2d 1310, 1315-16 (6th Cir.1988) ("borrowing" the three-month limitations period from § 12 of the FAA for application to § 301 motions to vacate arbitration awards even in the face of a parallel state statute of limitations), *with Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261,* 912 F.2d 608 (2d Cir.1990) (applying state statute of limitations), *Posadas de Puerto Rico Associates, Inc. v. Asociacion de Empleados de Casino de Puerto Rico,* 873 F.2d 479 (1st Cir.1989) (same), *San Diego County Dist. Council of Carpenters v. G.L. Cory,* 685 F.2d 1137 (9th Cir.1982) (same), *Sine v. Local Union No. 992,* 644 F.2d 997 (4th Cir.1981) (same), *and Jefferson Trucking Co.,* 628 F.2d at 1026 (same).

---

[4]Although the FAA does not apply to collective bargaining agreements, *see* 9 U.S.C. § 1, the district court correctly observed that federal courts look to the FAA for guidance when dealing with § 301 arbitration cases. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9, 108 S. Ct. 364, 372 n.9 (1987) (acknowledging that "federal courts have often looked to the [FAA] for guidance in labor arbitration cases," especially where § 301 of the LMRA applies); *Int'l Bhd. Teamsters, Local 519 v. U.P.S.*, 335 F.3d 497, 503 n.2 (6th Cir. 2003); *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003) ("[W]hen reviewing a case involving a CBA and arising under Section 301, courts . . . may rely on [the FAA] for guidance in reviewing an arbitration award."); *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 19 n.3 (1st Cir. 2001) ("[F]ederal courts rely on FAA cases to inform their LMRA analysis."); *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812,* 242 F.3d 52, 55 (2d Cir. 2001) ("[T]he body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone.").

The district court based its decision on *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851 (11th Cir. 1989).  In *Cullen*, we determined that a party is time-barred from raising any defense to an arbitration award when it has not moved to vacate the award within the three-month time prescribed by § 12 of the FAA.  863 F.2d at 854; 9 U.S.C. § 12.

*Cullen*, however, was a FAA case, and did not invoke an award pursuant to a collective bargaining agreement calling for binding arbitration of disputes.  Wise argues that "[g]iven the substantive differences between Section 301 and the FAA, the district court erred by applying *Cullen* to preclude Wise from asserting its defense." (Appellant Br. at 35-36.)  In support of this argument, Wise points out that § 301 actions can be defended on broader grounds than those permitted under the FAA.  While we agree that there are defenses that can be asserted under § 301 that are different from those that can be asserted under the FAA, it does not follow that we cannot borrow the three-month limitation on filing from the FAA.  Section 301 is silent on the time for filing a motion to vacate.  But there must be a limitation on when a motion to vacate can be filed in order to provide finality to the parties.  As stated by the Seventh Circuit, the enforcement of a specific time period within which a party may move to vacate an arbitration award under the LMRA "is intended to enhance the speed and effectiveness of arbitration, to provide fair review of the

17

arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 277 (7th Cir. 1989) (citation omitted). We look to the FAA for guidance on timing.

We were faced with essentially the same issue presented in this case more than twenty years ago in *American Postal Workers Union v. United States Postal Serv., 823 F.2d 466 (11th Cir.1987).* In *American Postal Workers*, as here, we were tasked with determining the appropriate limitations period to govern a suit to vacate an arbitration award rendered under a collective bargaining agreement. Unlike this case, however, the statute under which the action was brought was the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 101 *et seq.*, not the LMRA. *Id.* at 469. As we noted in *American Postal Workers*, however, the PRA was designed by Congress to have the same effect on postal employees as § 301 has on labor law. *Id.* And, our analysis in *American Postal Workers* focused on the interaction between the FAA and § 301. *Id.* As we stated, "[w]e believe that the time period during which an arbitration award is vulnerable to attack is a[] . . . crucial matter of federal labor policy . . .[and] federal labor policy . . . requires a uniform federal limitation for suits to vacate arbitration awards under collective bargaining agreements . . . ." 823 F.3d at 475. We therefore held that the appropriate limitations period for a

18

"straightforward union (or employer) challenge to an arbitration award" was the FAA's three-month period because "adoption of the limitation period in that statute serves the federal interest of 'relatively rapid disposition of labor disputes.'" *Id.* at 475-76 (quoting *United Auto Workers v. Hoosier Cardinal Corp.*, 838 U.S. 696, 707, 86 S. Ct. 1107, 1114 (1966)).

Though our holding in *American Postal Workers* addressed cases brought under the PRA,[5] we see no difference between the PRA and the LMRA that is significant enough for us to depart from the reasoning of *American Postal Workers*. Consequently, we make explicit today that a three-month limitation period applies to a motion to vacate an arbitration award arising out of collective bargaining agreements.[6]

In applying the three-month limitations period to this case, the district court properly concluded Wise's federal common law fraud defense was untimely. In order

---

[5]The Fourth Circuit interpreted our holding in *American Postal Workers* to apply to both the PRA and to § 301 motions to vacate. *See Sheet Metal Workers Int'l Ass'n, Local Union No. 33 v. Power City Plumbing & Heating, Inc.*, 934 F.2d 557, 560 (4th Cir. 1991).

[6]We recognize today, as we recognized when deciding *American Postal Workers*, 823 F.2d at 475, that the circuits are split on whether to apply the applicable state or federal limitation statute to the vacation of § 301 arbitral awards. Nevertheless, we favor borrowing the federal statute because it results in a uniform three-month limitation period. If we were to apply the relevant state statute of limitations, however, Wise's motion would still be untimely. Under Alabama law, a party has thirty days to file an appeal of an arbitration award. *See* Ala. R. Civ. P. 71B(b) ("The notice of appeal shall be filed within thirty (30) days after service of notice of the arbitration award. Failure to file within thirty (30) days shall constitute a waiver of the right to review.").

19

to properly raise the defense, Wise needed to timely challenge the award. *See Occidental*, 853 F.2d at 1317 ("[T]he settled rule [is] that objections that might have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired.") (citation omitted). The arbitrator entered his award on November 21, 2008. Wise's defense to the enforcement of the award was not filed until April 30, 2009, when included in its Answer to this action seeking enforcement of the award. Therefore, the district court properly held that its defense was time-barred. Because the district court found that Wise was time-barred from asserting its fraud defense to the arbitration award, it held that the defendant was not entitled to discovery on the issue of fraud and denied Wise's motion to compel discovery. We find no abuse of discretion.

## VI. CONCLUSION

For the reasons stated above, the judgement of the district court is AFFIRMED.

AFFIRMED.

20