[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13269
Non-Argument Calendar
_____

D.C. Docket No. 7:16-cv-01345-LSC


PECO FOODS INC,

Plaintiff - Counter
Defendant - Appellant,

versus

RETAIL WHOLESALE AND DEPARTMENT
STORE UNION MID-SOUTH COUNCIL,

Defendant - Counter
Claimant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 15, 2018)

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Peco Foods, Inc. appeals from the district court's denial of its motion to vacate an arbitration award requiring it to reinstate Larry Richardson, an employee who was terminated for making an allegedly threatening comment during a safety meeting. Richardson is a member of the Retail Wholesale and Department Store Union, which brought the arbitration proceeding on his behalf. Peco asserts that the district court erred in refusing to vacate the arbitration award (1) because enforcement of the award violates public policy and (2) because the arbitrator exceeded his authority in concluding that Peco had waived its challenge to the timeliness of the Union's arbitration demand. In response, the Union has filed a motion asking this Court to sanction Peco for bringing a frivolous appeal. We affirm the district court's decision and deny the motion for sanctions.

**I**

On January 21, 2015, Richardson's supervisor held a safety meeting, during which he reminded employees that throwing ice was prohibited during work hours. Richardson commented, "I don't throw ice, I throw lead." The supervisor recalled a recent workplace shooting at another business and reported the comment to a human resources director, who began an investigation. The director asked Richardson what he meant by the comment and Richardson said, "I know what

2

other people think I mean, but I don't know what I mean." On January 22, 2015, Richardson was terminated for making a threatening comment.

The Union, of which Richardson is a member, had a collective bargaining agreement with Peco. The Agreement provides for grievance and arbitration procedures as "the exclusive means for the disposition of all grievances." A grievance is defined as "any dispute, claim or complaint arising under and during the term of this Agreement and filed by an employee in the bargaining unit of the Union." The Agreement sets out a multi-step grievance procedure, and if a grievance remains unresolved after the steps have been concluded, the Union may take the grievance to arbitration. To invoke the arbitration provision, the Union "shall give written notice to [Peco] of its intent within fifteen (15) calendar days of … [Peco's] answer at Step 3 of the grievance procedure."

The Agreement also provides that the arbitrator will have "jurisdiction and authority" over "the interpretation and specific application of the written provisions of [the] Agreement." The specific provision at issue here gives Peco the right "to manage its own business, including but not limited to the right … to discipline and discharge employees for just cause." The Agreement states that "[t]he opinion and award of the arbitrator shall be final and binding upon the parties when rendered upon a matter within the authority of the arbitrator and within the scope of matters subject to arbitration as provided in this Agreement."

3

After Richardson's termination, the Union filed a grievance on his behalf. The parties proceeded through the steps of the grievance procedure, and Peco denied the grievance on February 23, 2015. The Union gave written notice of its intent to arbitrate on March 23, 2015—thirteen days after the deadline for such notice had passed. Peco did not raise any objection to the timeliness of the notice at that time, and the parties selected an arbitrator and a hearing date.

The arbitrator held a hearing in May 2016, and both parties appeared and presented evidence. During that hearing, Peco argued for the first time that the arbitrator did not have the authority to decide the grievance because the Union's written request for arbitration was untimely. It also argued that it had acted within its right to terminate Richardson for cause. The arbitrator rejected both of those arguments. He first concluded that Peco had waived its challenge to the untimeliness of the Union's arbitration demand, and therefore that the dispute was arbitrable. He also concluded that Peco did not have just cause to terminate Richardson because his comment was not a threat. Specifically, the arbitrator found that Richardson's comment "was not specific" and was not directed at any specific person. Moreover, the arbitrator found that none of the other employees or his supervisor "considered his words to 'be threatening,'" that no one called the police, and that Richardson "was not sent home immediately."

4

After the arbitration proceedings concluded, Peco filed an action in federal district court seeking to vacate the arbitration award. The Union counterclaimed, seeking enforcement. The parties agreed to resolve the case by filing cross-motions for summary judgment. In its motion, Peco argued, among other things, that enforcing the award would violate public policy and that the arbitrator had exceeded his authority in concluding that Peco waived its challenge to the timeliness of the Union's arbitration demand. The district court rejected those arguments, denied Peco's motion for summary judgment, and granted the Union's motion for summary judgment. This is Peco's appeal of that decision.

## II

"An arbitration award pursuant to an arbitration provision in a collective bargaining agreement is treated as a contractual obligation that can be enforced through a . . . lawsuit" under 29 U.S.C. § 185. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 642 F.3d 1344, 1349 (11th Cir. 2011). However, "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower

5

courts." *Id.* at 38.  Instead, "[a]s long as the arbitrator's award draws its essence from the collective bargaining agreement," it is "legitimate" and should be enforced.  *Id.* at 36 (quotation marks omitted).  In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court may not "overturn his decision," even if the court "is convinced that he committed serious error."  *Id.* at 38.

We review *de novo* the district court's decision denying Peco's motion to vacate the arbitration award and granting Union's motion to enforce the award. *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010).

## A

Peco first argues that the district court erred in affirming the arbitration award because enforcement of the award violates public policy.  A court may refuse to enforce an arbitration award on public policy grounds only "where the contract as interpreted would violate some explicit public policy that is well defined and dominant."  *Misco*, 484 U.S. at 43 (quotation marks omitted).  The public policy must "be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  *Id.*  (quotation marks omitted).  "[T]he violation of such a policy must be clearly shown if an award is not to be enforced."  *Id.*

Here, as in the district court, Peco asserts that there is "a well-defined and dominant public policy against workplace violence." It further asserts that the arbitration award requiring Richardson's reinstatement violates that public policy because Richardson's comment about "throwing lead" was—in Peco's opinion—a threat of violence. The district court concluded that even assuming that Peco "had established a public policy sufficient to vacate an arbitration award, no violation of that policy was clearly shown."

We agree with the district court. Peco's public policy argument rests entirely upon its assertion that Richardson's comment about "throwing lead" was a threat of workplace violence. But the arbitrator found that Richardson's statement was not a threat of violence, and this Court is not permitted to second-guess the arbitrator's findings of fact. *Misco*, 484 U.S. at 45. That is because "[t]he parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them." *Id.* Nor are we permitted to second guess the arbitrator's findings of fact merely because we are "inquiring into a possible violation of public policy." *Id.*

Peco's public policy argument relies heavily on *Delta Air Lines, Inc. v. Air Line Pilots Association*, 861 F.2d 665 (11th Cir. 1988), but that decision is distinguishable. In *Delta Air Lines*, this Court refused to enforce an arbitration award that would have required reinstatement of a commercial airline pilot who had flown a plane filled with passengers while drunk. There, it was undisputed

that the pilot had flown the plane while drunk, in violation of numerous laws and company policies. *Id.* at 667–68. The arbitration panel nonetheless concluded that the airline did not have just cause to fire the pilot because it first should have offered him the chance to enter a rehabilitation program. *Id.* at 668. This Court concluded that enforcement of the award would violate an explicit and well-defined public policy against flying an aircraft while drunk. *Id.* at 674. The Court did not overturn any of the arbitration panel's findings of fact; instead, it concluded that enforcement of the award would violate public policy, given those undisputed facts. *Id.* Here, by contrast, in order to vacate we would be required to overturn the arbitrator's finding that Richardson's statement was *not* a threat of violence in order to hold that the award violates public policy. We therefore reject Peco's public policy argument.

## B

Peco next argues that the arbitrator "exceeded his authority" under the Agreement by finding that Peco had waived its challenge to the timeliness of the Union's written request for arbitration. Specifically, the arbitrator concluded that Peco had "accepted" the grievance for arbitration by "fully participat[ing] in meetings" after the grievance process had concluded—including meetings to select an arbitrator and set a time, place, and date for a hearing—all without ever raising its timeliness challenge. Peco asserts that the arbitrator exceeded his authority

8

because the terms of the Agreement "are unambiguous and required the Union to provide written notice of its intent to request arbitration no later than March 10, 2015," and because it is undisputed that the Union requested arbitration after that date. *Id.* According to Peco, those undisputed facts left nothing for the arbitrator to interpret. The district court rejected that argument, concluding that the arbitrator was acting within his authority when he concluded that Peco had waived its timeliness challenge. We agree.

We addressed a similar argument in *Shopmen's Local 539 of the International Association of Bridge, Structural and Ornamental Iron Workers v. Mosher Steel Co*., 796 F.2d 1361 (11th Cir. 1986). The collective bargaining agreement in *Mosher* allowed the union to refer a matter to arbitration, "provided the request … is made within 20 days of the date upon which the decision was rendered." *Id.* at 1362. The union did not request arbitration until five days after that deadline. The employer waited until the arbitration hearing to raise the untimeliness of the notice, and the arbitrator determined that the employer had waived its argument. This Court enforced the arbitration award, noting that the employer did not "raise the issue of the untimeliness of the notice when given," and "affirmatively proceeded towards the arbitration" by "naming an arbitrator and setting the date of the arbitration, thus clearly requiring the Union to prepare its evidence for the hearing before the arbitrator without any knowledge that [the

9

employer] would, at that time, raise the issue of untimeliness of the notice." *Id.* at 1365. We reasoned that "[w]hether or not the Court would agree with the arbitrator that these facts amounted to a waiver, it is not the function of the Court to second guess the arbitrator on matters that were within his power to decide." *Id.*

Similarly, in *Drummond Coal Co. v. United Mine Workers of America, District 20*, this Court held that an arbitrator's decision "not to resolve the dispute on the basis of … language in the collective bargaining agreement requiring submission of [a form] within five days does not…require this court to vacate the arbitral award." 748 F.2d 1495, 1498 (11th Cir. 1984). Instead, the award "rested upon the application of the doctrine of waiver," and "[a]rbitrators have frequently recognized that parties may waive or otherwise be estopped from asserting rights granted under the collective bargaining agreement." *Id.* Therefore, the award was "based upon the arbitrator's factual assessment of the actions and intentions of the parties," which courts are not allowed to review. *Id.*

Peco argues that this case is distinguishable from *Mosher* and *Drummond* because here, it says, the Agreement "only allows written waiver of the grievance procedure, and does not allow for waiver by conduct." The provision to which Peco refers states in full:

> Should a [Peco] representative fail to give his written answer within any time limit set forth above, the Union may appeal the grievance to the next step at the expiration of such time limit. The grievance shall be considered settled if not appealed to a higher step within an

10

established time limit and shall not be the subject of any further proceeding. This provision may be waived in specific instances by mutual written agreement of the parties.

Doc. 16-2 at 9, ¶ 3. Peco's argument focuses on the last sentence allowing "[t]his provision" to be waived by "mutual written agreement of the parties." Peco asserts that in light of this provision, the Agreement "only allows written waiver."

But the provision quoted above appears to apply to the multi-step grievance procedure that must be exhausted before arbitration is requested, not to written arbitration requests. It immediately follows a provision detailing the four steps, and provides that the grievance "shall be considered settled" if not appealed to "a higher step" within the required time. The provisions governing arbitration come later in the Agreement. Importantly, the provision requiring the Union to "give written notice to [Peco] of its intent" to arbitrate within 15 days of Peco's answer at step three of the grievance procedure is in a later paragraph, and that paragraph says nothing about methods of waiver. At the very least, it is unclear whether the provision concerning "written waiver" applies to the 15-day deadline for arbitration demands. We therefore agree with the district court that the arbitrator was acting within his broad discretion to interpret and apply the terms of the Agreement in concluding that Peco waived its challenge through its conduct. *See, e.g., Mosher Steel*, 796 F.2d at 1366 (courts must "uphold an arbitrable award that

11

is premised on the arbitrator's construction of the contract and his understanding of the intent of the parties") (quoting *Drummond*, 748 F.2d at 1497).

## III

Finally, we briefly address the Union's "Motion for Frivolity Determination under F.R.A.P 38," which seeks "a determination that the appeal filed by [Peco] in this matter is frivolous," an award of "just damages and costs," and "any other remedy deemed appropriate by the Court." The Union asserts that this Court "has expressed exasperation with parties 'who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards'" and has "warn[ed]" that sanctions may be appropriate in such cases. Appellee's Mtn. at 1–2 (quoting *B.L. Harbert Int'l v. Hercules Steel Co.*, 441 F.3d 905, 913–914 (11th Cir. 2006)).

Although we ultimately conclude that Peco's arguments are meritless, we do not think they sink to the level of frivolous. Specifically, this Court's decision in *Delta Air Lines* provided at least a colorable basis for Peco's public policy argument, even if it was unsuccessful. Moreover, as to the arbitrator's authority to find waiver, Peco presented a colorable, even if unsuccessful, argument that the contractual provisions at issue here are distinguishable from those at issue in *Mosher* and *Drummond*.

## IV

12

We hold that the district court did not err in concluding that enforcing the arbitration award does not violate public policy because the arbitrator found that Richardson's comment was not a threat of workplace violence.  Nor did the district court err by holding that the arbitrator was acting within his authority in finding that Peco had waived its challenge to the timeliness of the Union's arbitration notice.  We also deny the Union's motion for sanctions.

**AFFIRMED.**