FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Nu Image, Inc., a California corporation,<br><br>            *Plaintiff-Appellant*,<br><br>v.<br><br>International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada, Local 720, AFL-CIO, CLC,<br><br>            *Defendant-Appellee.* | No. 16-55451<br><br>2:15-cv-05704-CAS-AFM<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted December 7, 2017
Pasadena, California

Filed June 20, 2018

Before:  Paul J. Kelly, Jr.,[*] Consuelo M. Callahan,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Kelly;
Dissent by Judge Bea

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of an action brought under the Labor Management Relations Act.

An employer alleged that a union engaged in intentional and negligent misrepresentation to induce it to enter into a collective bargaining agreement.  The employer sought a declaratory judgment that part of the CBA was invalid.

The panel held that § 301(a) of the LMRA grants jurisdiction only for suits that claim a violation of a CBA, which the employer did not do.  The panel rejected the argument that the LMRA grants a district court jurisdiction to hear any case in which a party, or third party, has alleged a violation of a CBA.  The panel concluded that the court's holding in *Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &*

---

[*] The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

*Helpers of Am.*, 850 F.2d 1321 (9th Cir. 1988), that an employer can sue under § 301(a) for declaratory relief to void a provision of a CBA without alleging a contract violation, could not stand following *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, & Agric. Implement Workers of Am.,* 523 U.S. 653 (1998). The panel further held that jurisdiction was not authorized under *Textron*'s holding that, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, a court may, consistent with § 301, adjudicate an affirmative defense that the contract was invalid.

Dissenting, Judge Bea wrote that he agreed with the majority that *Textron* abrogated the reasoning underlying *Rozay's Transfer*. Diverging from the majority, however, Judge Bea wrote that, under *Textron*, § 301(a) extends subject matter jurisdiction to actions seeking declaratory relief from alleged violations of a CBA. Because the employer sought relief from its accused violation of the parties' CBA, its claims should be allowed to proceed in federal court.

**COUNSEL**

Martin D. Katz (argued), Richard W. Kopenhefer, and Matthew G. Ardoin, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California, for Plaintiff-Appellant.

David A. Rosenfeld (argued), William A. Sokol, and Michael D. Burstein, Weinberg Roger & Rosenfeld, Alameda, California, for Defendant-Appellee.

---

**OPINION**

KELLY, Circuit Judge:

This case concerns the scope of federal subject matter jurisdiction under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Plaintiff-Appellant Nu Image, Inc., brought suit in federal district court under section 301(a) against Defendant-Appellee International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada, AFL-CIO ("IATSE"). Nu Image claimed that IATSE engaged in intentional and negligent misrepresentation to induce Nu Image to enter into a collective bargaining agreement ("CBA") and sought a declaratory judgment that part of the CBA was invalid. The district court dismissed the action for lack of subject matter jurisdiction, holding that section 301(a) grants jurisdiction only for suits that claim a violation of a CBA, which Nu Image did not do. *Nu Image, Inc. v. Int'l All. of Theatrical Stage Emps.*, No. 2:15-CV-05704-CAS(AFMx), 2016 WL 917887, *4, *7 (C.D. Cal. Mar. 7, 2016). Having jurisdiction under 28 U.S.C. § 1291, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Prior to 2006, Nu Image, an independent movie production and marketing company, and IATSE, a labor organization that represents motion picture production crew members, entered into single production CBAs. These CBAs governed their relationship on a per-motion-picture basis. After 2006, Nu Image and IATSE entered into negotiations for an "Overall CBA" that would govern all motion picture productions. The Overall CBA required Nu Image to make residual contributions to the Motion Picture Industry Health and Pension Plans (the "Plans").

During negotiations for the Overall CBA, Nu Image alleges that it told IATSE "it would not agree to an Overall CBA if it were required to remit Residual Contribution payments to the Plans." 3 ER 318. Nu Image claims that IATSE orally represented that neither IATSE nor the Plans would seek contribution. Between 2006 and 2009, Nu Image did not pay into the Plans and neither the Plans nor IATSE took the position that Nu Image was required to pay.

On May 13, 2013, however, the Plans sued Nu Image for breach of the Overall CBA for failure to pay residual contributions to the Plans from 2006 to 2010.[1] Nu Image informed the Plans of the prior oral agreement between Nu Image and IATSE; however, IATSE denied that any oral agreement occurred. On March 9, 2015, IATSE filed a grievance under the Overall CBA against Nu Image for its failure to pay into the Plans, which IATSE maintained was a

---

[1] The Plans later filed a second suit on December 30, 2014, claiming a failure to pay from 2011 through 2014. That lawsuit was dismissed pending a further audit of Nu Image. On February 4, 2015, Nu Image settled the Plans' first lawsuit.

"continuing breach of the parties' [CBA]." 3 ER 224. Nu Image and IATSE thereafter entered in arbitration. Nu Image soon hired new counsel, put the arbitration on hold, and filed the present suit. Asserting jurisdiction under section 301(a), Nu Image claimed that as a result of IATSE's intentional and negligent misrepresentation, Nu Image incurred and will continue to incur significant costs. Nu Image also claimed that IATSE claimed "that Nu Image breached the CBA . . . by failing to pay Residual Contributions." 3 ER 314. Nu Image finally sought declaratory relief requesting "a judicial determination that the Residual Contribution provisions in the [Overall CBA] do not apply to Nu Image." 3 ER 324. IATSE filed a motion to dismiss the complaint for lack of subject matter jurisdiction arguing that Nu Image's complaint was not a suit for violation of a contract. *See* Fed. R. Civ. P. 12(b)(1). The district court agreed and dismissed the action. This timely appeal followed.

## DISCUSSION

A district court's dismissal for lack of subject matter jurisdiction is reviewed de novo. *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).

This case presents a difficult question regarding the scope of the jurisdiction granted by section 301(a). Nu Image argues that the LMRA grants a district court jurisdiction to hear any case in which a party, or third party, has alleged a violation of a CBA. According to Nu Image, it does not matter whether the plaintiff in a given case specifically alleges a violation of a CBA as an element of its claims. As a result, Nu Image contends that the district court has jurisdiction to hear this case because it arises out of the fact that IATSE accused Nu Image of violating the Overall CBA.

IATSE, on the other hand, argues that section 301(a) grants jurisdiction to hear only those cases in which the plaintiff alleges a claim based on a violation of a CBA. Because Nu Image does not allege that there has been a violation of the Overall CBA as an element of any of its claims contained in its complaint, IATSE argues that section 301(a) does not provide the district court with subject matter jurisdiction to resolve Nu Image's claims. We agree.

Section 301(a) grants federal courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This statute is an "exception to the primary jurisdiction doctrine [of the NLRB] . . . designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement." *Pace v. Honolulu Disposal Serv.*, 227 F.3d 1150, 1156 (9th Cir. 2000) (quoting *United Ass'n of Journeymen v. Valley Eng'rs*, 975 F.2d 611, 614 (9th Cir. 1992)). Section 301(a) is designed to allow federal courts the limited role of "enforc[ing] . . . collective bargaining agreements." *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470 (1960).

This seemingly simple statute is complicated by precedent. We previously have allowed an employer to sue under section 301(a) for declaratory relief and misrepresentation to void a provision of a CBA. *See Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 850 F.2d 1321 (9th Cir. 1988). In *Rozay's Transfer*, Rozay's Transfer, an employer, sued Teamster's Local 208 ("Teamster's") under section 301(a) for fraudulent inducement into executing a new CBA. *Id.* at 1323. During the negotiations for the new CBA, Rozay's had expressed concern that it might not be able to pay trust fund

contributions that would be owed under the new CBA. *Id.* at 1324. Teamster's told Rozay's that it would ask the Trust Fund to waive them. *Id.* When asked, however, the Trust Fund refused to waive the contribution requirements. *Id.* Teamster's did not inform Rozay's of the denial and it entered into the new CBA. *Id.* Southwest Administrators, the Trust Fund's assignee, subsequently sued Rozay's for failure to pay into the fund. *Id.* Because Rozay's could not assert a fraudulent inducement claim against the fund under the law, Rozay's instead filed a separate suit against Teamster's for fraudulent inducement to recover its damages. *Id.* at 1324–25. The district court resolved the action in favor of Rozay's. *Id.* at 1325. On appeal, union amicus contested jurisdiction, arguing that this court did not have jurisdiction over the claim because the NLRB had exclusive jurisdiction. This court disagreed and held that the district court had jurisdiction under section 301(a) to "entertain this action alleging fraudulent inducement in the formation of the agreement." *Id.* at 1325–26.

The parties agree that if *Rozay's Transfer* remains good law, then the district court had subject matter jurisdiction over this case. Since *Rozay's Transfer*, however, the Supreme Court decided *Textron Lycoming Reciprocating Engine Division, Avco Corp. v. United Automobile, Aerospace, and Agriculture Implement Workers of America,* 523 U.S. 653 (1998), which calls into doubt *Rozay's* holding. Thus, the question before us is whether *Rozay's Transfer* remains good law and, if not, whether *Textron* now forecloses section 301 jurisdiction over Nu Image's claims. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003).

In *Textron*, the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and Textron Lycoming Reciprocating Engine Division

("Textron") were parties to a CBA that "required Textron to give the Union seven days' notice before entering into any agreement to 'subcontract out' work." 523 U.S. at 654–55. Textron later announced that it would subcontract out its work, causing many Union members to lose jobs. *Id*. at 655. UAW sued under section 301(a) claiming that it was fraudulently induced into signing a CBA and seeking a declaratory judgment that the CBA was void. *Id*. Of importance, UAW did not allege that either it or Textron had violated the CBA. *Id*. Applying a textual analysis of section 301(a), the Court held that because "'[s]uits for violation of contracts' under [section] 301(a) *are not suits that claim a contract is invalid*, but suits that claim a contract has been violated," the district court lacked jurisdiction. *Id*. at 657 (emphasis added).

After careful consideration of both opinions, we conclude that *Textron* has abrogated the reasoning underlying *Rozay's Transfer*. In *Rozay's Transfer*, citing previously established circuit precedent, this court held that the declaratory relief and misrepresentation claims could move forward because "[s]ection 301 . . . applies not only to suits for breach of a collective bargaining agreement once it is duly formed, but also to suits impugning the existence and validity of a labor agreement." 850 F.2d at 1326. *Textron* clearly states that section 301(a)'s grant of jurisdiction does not sweep so broadly. 523 U.S. at 656. Thus, our holding in *Rozay's*, that an employer can sue under section 301(a) for declaratory relief to void a provision of a CBA all without alleging a contract violation, cannot stand after *Textron*.

This does not end the case though. *Textron* made clear that its holding "does not mean that a federal court can never

adjudicate the validity of a contract under [section] 301(a)." 523 U.S. at 657.  Instead,

> [Section 301(a)] simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with [section] 301(a), adjudicate that defense. *Similarly, a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.* But in these cases, the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate '[s]uits for violation of contracts.'"

*Id.* at 657–58 (emphasis added) (citation omitted).  Nu Image argues this language completely supports its position—Nu Image is "a declaratory judgment plaintiff" that has been "accused of violating a collective-bargaining agreement" and is now asking the court to "declare the agreement invalid."  While Nu Image may admit that its suit is one claiming the contract is invalid (which *Textron* does not allow), it argues that in this context "ancillary" refers to "a federal court's power to entertain a declaratory judgment action as part and parcel of its jurisdiction over 'suits for violation of contracts' under Section 301(a)."  Aplt. Reply

Br. at 13. Therefore, its suit passes through the jurisdictional gateway and the court has jurisdiction.

Nu Image's reading of *Textron* ignores what *Textron* commands: a party must *first* pass through the jurisdictional "gateway" (by alleging a violation of contract) before asking if any of its additional claims (such as its declaratory judgment action to void the Overall CBA) are ancillary or independent. *Textron*, 523 U.S. at 658.

We hold that Nu Image has not crossed this initial threshold. Its claim is that part of the Overall CBA is invalid because IATSE misled Nu Image during the contract negotiations. Complaint at 2, *Nu Image, Inc v. Int'l All. of Theatrical Stage Emps.*, No. 2:15-CV-05704 (C.D. Cal. Mar. 7, 2016), ECF No. 1. Clearly, Nu Image seeks not the enforcement of a contract, but rather the *voiding of it*. Nu Image forthrightly asks "[f]or a judicial determination that the Residual Contribution provisions in the Basic Agreement do not apply to Nu Image." *Id.* at 11. While its motivation for seeking this relief may be an *accusation* of a contract violation by IATSE, Nu Image did not bring suit "*because a contract has been violated*." *Textron*, 523 U.S. at 657. *Textron* bars suits claiming a contract is void unless a plaintiff also alleges as an element of its claim[2] a "violation of the collective-bargaining agreement," which Nu Image has not done. *Id.* at 661. To the contrary, Nu Image does not claim that either it or IATSE violated the Overall CBA. To restate: Nu Image filed suit seeking to void the CBA

---

[2] The dissent contends that section 301(a) does not require a violation of the CBA as an element of the claim. However, if section 301(a) grants federal courts jurisdiction to hear only "suits that claim a contract has been violated," *Textron*, 523 U.S. at 657, it is unclear how a suit could be filed in which a contract violation is *not* an element of that claim.

(which *Textron* clearly bars) based on an alleged state law misrepresentation claim (a theory the NLRB arguably has primary jurisdiction over, *see id.* at 662 (Stevens, J., concurring)), all under a statute that grants jurisdiction for only "[s]uits for violation of contracts."  29 U.S.C. § 185(a). This is a bridge too far.

Considering both the plain language of the statute, *Textron*'s holding, and the limited role of federal courts in labor disputes, we hold that Nu Image's claim is too far removed and too independent to pass through section 301(a)'s jurisdictional gateway.  We are mindful that this point has divided the circuits, *compare Gerhardson*, 698 F.3d at 1058 ("*Textron* only permits a litigant to raise the validity of a contract as an affirmative defense; it does not allow such claims to be asserted offensively"), *with Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 406 n.16 (5th Cir. 2014) ("A plaintiff's claim that it (and not the defendant) allegedly violated a labor contract is sufficient to support section 301 jurisdiction."), *and J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967, 973 (7th Cir. 2005), *as amended on denial of reh'g and reh'g en banc*, No. 04-2797, 2005 WL 957272 (7th Cir. Mar. 28, 2005) (holding that district court had jurisdiction over declaratory judgment plaintiff "accused of violating the terms of the collective bargaining agreement"), but in our judgment, absent some affirmative claim by the plaintiff[3] of

---

[3] Of course, once a plaintiff makes a claim of violation of contract, the federal court obtains jurisdiction and section 301(a) "does not restrict the legal landscape [the federal court] may traverse."  *Textron*, 523 U.S. at 658.

a violation of the contract, a district court does not have jurisdiction under section 301(a).

The dissent advances two principal reasons against our reading of *Textron*. First, in its view, the examples provided in *Textron* (after invocation of the "gateway" metaphor) are all examples of the types of cases that automatically pass through the gateway and by holding otherwise, we are ignoring "clear guidance" in the form of Supreme Court dicta. Second, the dissent suggests that Nu Image is without recourse and our result favors IATSE. Neither reason is persuasive. Under the dissent's view, section 301(a) as a jurisdictional grant is limitless.

We reject the first reason because the dissent's broad reading of *Textron*'s gateway language does not make sense in context. Supreme Court dicta should be given "due deference," but it is the Court's holding that is ultimately binding. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000). *Textron*'s very next sentence—"the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate '[s]uits for violation of contracts'"— belies any notion that a party may pursue non-contract violation claims without first alleging a violation of contract. Concerning the second reason, Nu Image cannot complain about inequity, having intentionally withdrawn from arbitration to pursue a federal forum. The dissent also gives no reason, and we see none, why Congress cannot create a jurisdictional statute that at times allows one party into federal court but not another. It is not strange at all that Nu Image cannot file in federal court because IATSE *could* file a claim. *Cf. Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1 (1983).

In the end, the dissent's reading of the statute would expand section 301(a) beyond recognition. Any party seeking to invalidate a contract would have a federal forum merely by alleging that another party claimed, *in any context*, a contract violation. Section 301(a), a limited jurisdictional grant, cannot sweep so broadly.

IATSE also argues that *Rozay's Transfer* was implicitly overruled by the Supreme Court's opinion in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010). Because we resolve the case on the reasoning above, we decline to rule on the applicability of *Granite Rock*.

**AFFIRMED.**

---

BEA, Circuit Judge, dissenting:

The majority opinion ignores clear guidance from the Supreme Court regarding the meaning of section 301(a) of the Labor Management Relations Act (the "LMRA"), *see* 29 U.S.C. § 185(a), and, in doing so, reaches a formalistic and impractical result which gives to a game-playing party, who is perhaps in violation of a collective bargaining contract ("CBA"), the option to avoid the federal court jurisdiction provided by section 301(a) of the National Labor Relations Act. Because I think this court is bound to give the Supreme Court's guidance deference, I respectfully dissent.

I

Plaintiff-Appellant Nu Image, Inc. ("Nu Image") is an independent movie production and marketing company. Defendant-Appellee International Alliance of Theatrical

Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada ("IATSE") is a labor union that represents motion picture production crew members.

In 2006, Nu Image and IATSE negotiated a universal CBA to govern their future dealings (the "Overall CBA"). The Overall CBA incorporated by reference a form CBA used by IATSE to govern its relationship with a variety of production companies. The form CBA included a provision that required production companies to make "residual contribution" payments to certain defined benefit plans (the "Plans"). During negotiations, Nu Image claims that it made it clear that it would not enter into the Overall CBA if it were required to make residual contribution payments to the Plans. Nu Image claims that, in response, IATSE represented to Nu Image that neither IATSE nor the Plans would seek residual contribution payments from Nu Image. The parties then entered into the Overall CBA.

For seven years, Nu Image and IATSE operated and worked under the Overall CBA. Nu Image did not make residual contribution payments to the Plans. Neither the Plans nor IATSE requested residual contribution payments. In May 2013, however, the Plans, as beneficiaries to the Overall CBA, sued Nu Image for failure to make the residual contribution payments from 2006 through 2010 (the "First Plans-Nu Image Lawsuit"). Nu Image asked IATSE to inform the Plans that Nu Image was not required to make those payments, and to execute a side letter to that effect, but IATSE declined to do so.

When IATSE refused to execute the requested side letter, Nu Image filed a grievance against IATSE under the Overall CBA alleging that IATSE had fraudulently induced Nu Image to enter into the Overall CBA (the "Nu Image

Grievance"). Importantly, Nu Image could not raise these arguments in the First Plans-Nu Image Lawsuit because fraud in the inducement of the underlying contract is not a defense in certain ERISA actions, such as the First Plans Nu-Image Lawsuit. *See Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 775 (9th Cir. 1986). As a result, Nu Image's only remedy was to seek indemnification from IATSE against the claims brought by the Plans in the First Plans-Nu Image Lawsuit.

In 2015, while the Nu Image Grievance was pending, Nu Image settled the First Plans-Nu Image Lawsuit with the Plans. But, in the meantime, the Plans sued Nu Image again, this time alleging that Nu Image had failed to make the required residual contribution payments from 2011 through 2014 (the "Second Plans-Nu Image Lawsuit"). The Second Plans-Nu Image Lawsuit was dismissed without prejudice to allow the Plans to conduct a further audit of Nu Image.

In March 2015, IATSE submitted a grievance against Nu Image, pursuant to the overall CBA. It claimed that Nu Image breached the overall CBA by failing to make the required residual contribution payments and that Nu Image's failure to make those payments was a "continuing breach" of the Overall CBA (the "IATSE Grievance"). IATSE sought to recover the difference between the residual contribution payments Nu Image should have made under the Overall CBA and the amount Nu Image had paid to the Plans to settle the First Plans-Nu Image Lawsuit.

Nu Image and IATSE moved toward arbitration on both the Nu Image Grievance and the IATSE Grievance. However, Nu Image then retained new counsel, who put the grievance proceedings on hold. Subsequently, Nu Image filed a complaint against IATSE in the District Court for the Central District of California (the "Complaint"). The

Complaint alleges claims for Intentional Misrepresentation, Negligent Misrepresentation, and Declaratory Relief. In the Complaint, Nu Image seeks a judicial determination that residual contribution provisions of the Overall CBA do not apply to Nu Image and a finding that IATSE must indemnify Nu Image for any damages Nu Image incurs as a result of the Plans' lawsuits.

The Complaint asserted that the district court had subject matter jurisdiction pursuant to section 301(a) of the LMRA, which allows district courts to hear "Suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185. IATSE filed a motion to dismiss the Complaint for lack of subject matter jurisdiction, arguing that the Complaint was not a suit "for violation of" a contract. *See* Fed. R. Civ. P. 12(b)(1). The district court agreed with IATSE and dismissed the Complaint. In response, Nu Image filed the instant appeal.

II

This case presents a difficult question, made more difficult by complicated precedent, regarding the scope of the federal court jurisdiction granted by section 301(a) that is complicated by precedent. Nu Image argues that the LMRA grants district courts jurisdiction to hear any case in which a party, or third party, has alleged a violation of a CBA, regardless whether the plaintiff in a given case specifically alleges a violation of a CBA as an element of its claims. IATSE, on the other hand, argues that section 301(a) grants jurisdiction to hear only those cases in which the plaintiff alleges a claim based on a violation of a CBA. Because Nu Image does not allege that there has been a violation by IATSE of the Overall CBA as an element of any of the claims in its Complaint, IATSE argues that section

301(a) does not provide the district court with subject matter jurisdiction in this case.

As the majority recognized, we have previously allowed claims substantively identical to Nu Image's to proceed under section 301(a). *See Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 850 F.2d 1321 (9th Cir. 1988). In *Rozay's Transfer*, we held that that the district court had jurisdiction under section 301(a) to "entertain this action alleging fraudulent inducement in the formation of the agreement." *Id.* at 1325–26. If *Rozay's Transfer* remains good law, the parties agree that the district court had subject matter jurisdiction over Nu Image's claims.

The majority correctly notes that the subsequent Supreme Court precedent has called our decision in Rozay's Transfer into doubt. *See Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653 (1998). Thus, the first question we must answer in this case is whether Textron impliedly abrogated our decision in Rozay's Transfer.[1]

I agree with the majority that *Textron* clearly abrogated the reasoning underlying *Rozay's Transfer*.[2] In *Textron*, the

---

[1] *Textron* did not directly address our opinion in *Rozay's Transfer*. Thus, any abrogation of our precedent would be implied, not direct.

[2] In *Textron*, an employer and labor union negotiated a CBA. 523 U.S. at 654–55. During negotiations, the labor union repeatedly asked the employer if it had any plans to shift its production to non-union channels; the employer stated that it had no such plans. *Id.* After the CBA had been signed, the employer announced plans to shift its production to non-union channels. *Id.* The union filed suit in federal

Supreme Court held that "'Suits for violation of contracts' under [section] 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated." *Id.* at 656–58. The *Textron* explained that that a "Suit for violation of" a contract "is one filed *because a contract has been violated*." *Id.* (emphasis in the original). The Court concluded that because "the [plaintiff] Union neither allege[d] that [the employer] has violated the contract, *nor [sought] declaratory relief from its own alleged violation*," the suit was not one "for violation of" a CBA and, as a result, there was no jurisdiction under section 301(a). *Id.* (emphasis added).

It is this last, underlined statement from the *Textron* court that causes me to diverge from the majority's opinion. In short, although the majority is correct that *Textron* abrogates the reasoning of *Rozay's Transfer*, my view is that the majority errs when it ignores *Textron*'s clear guidance that section 301(a) extends subject matter jurisdiction to actions seeking declaratory relief from alleged violations of a CBA.

There are two relevant statements from *Textron* that lead me to conclude that the district court had subject matter jurisdiction over Nu Image's claims. First, *Textron* states that its holding "does not mean that a federal court can never

---

court, seeking a declaration that the CBA was invalid due to the employer's misrepresentation. *Id.* The union claimed the district court had jurisdiction under section 301(a), but the district court dismissed the suit because it did not view it as a "suit for violation" of the CBA. *Id.* The third circuit reversed, holding that there was jurisdiction because the suit sought to invalidate the CBA. *Id.* The Supreme Court reversed the Third Circuit, finding that there was no jurisdiction under section 301. *Id.*

adjudicate the validity of a contract under § 301(a)." Instead:

> [Section 301(a)] simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense. *Similarly, a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.* But in these cases, the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate "[s]uits for violation of contracts."

*Id.* (citations omitted) (emphasis added).

The *Textron* Court went on to note that:

> [T]he Union neither allege[d] that Textron has violated the contract, *nor [sought] declaratory relief from its own alleged violation.* Indeed, as far as the Union's complaint disclose[d], both parties [were] in absolute compliance with the terms of the collective-bargaining agreement. Section

301(a) jurisdiction does not lie over such a
case.

*Id.* (emphasis added).

When read in conjunction, these two statements imply that had the union in *Textron* sought "declaratory relief from its own alleged violation" of the CBA, the district court would have had jurisdiction under section 301(a). Because Nu Image seeks precisely that sort of relief in this case, these statements from *Textron* support the conclusion that the district court had jurisdiction over Nu Image's claims.[3]

The majority makes much of the *Textron* court's statement regarding the "gateway" through which parties must pass into federal court. But the majority's reading of that passage is both strained and inconsistent with other portions of *Textron*. It is true that section 301(a) creates a "gateway" through which parties must pass before a district court may exercise jurisdiction over a claim that a CBA is invalid. But the *Textron* court provides two examples of cases that have passed through the jurisdictional gateway

---

[3] IATSE argues that these statements are mere dicta and should not overshadow *Textron*'s core holding. But IATSE's position is untenable in light of our repeated holding that we do "not treat considered dicta from the Supreme Court lightly. Rather, we accord it appropriate deference." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000). Indeed, "Supreme Court dicta 'have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold'; accordingly, we do 'not blandly shrug them off because they were not a holding.'" *Id.* (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir.1992) (Noonan, J., concurring and dissenting)). This deference is particularly persuasive in light of our rule that well-reasoned dicta in panel opinions is the binding law of the circuit. *See United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001).

other than by alleging a violation of a contract as an element of a claim.  First, a *defendant* in a section 301(a) suit who raises the invalidity of the CBA *as a defense* in a breach of contract action.  Second, a *plaintiff* who brings a declaratory judgment action seeking relief from the *plaintiff's* alleged violation[4] of a CBA.

The *Textron* court clearly meant both examples it gave to serve as illustrations of cases *where the parties had passed through the gateway* erected by section 301(a).    That understanding is further confirmed by the *Textron* court's later statement that the district court lacked jurisdiction, in part, because the union did not seek "declaratory relief from its own alleged violation" of the CBA, implying that the district court would have had jurisdiction had the union sought declaratory relief from its alleged violation of the CBA.  Seeking declaratory relief from an alleged violation of a CBA is sufficient to pass through section 301(a)'s gateway.  If these two examples given by the *Textron* Court do not provide an illustration of situations in which federal courts have jurisdiction to hear disputes regarding CBAs, in addition to cases in which a plaintiff asserts a breach of contract action, what *do* the *Textron* Court's words mean? The majority opinion elides an answer.

In this case, because Nu Image seeks relief from its accused violation of the Overall CBA, it has passed through section 301(a)'s "gateway," and its claims should be allowed to proceed in federal court.  This result makes sense.  After all, a breach of contract claim and a claim seeking

---

[4] Notably, the *Textron* court does not require a declaratory judgment plaintiff to state in the complaint that it *actually* violated the CBA, merely that it has been "accused" of violating the CBA, as Nu Image has done here.  523 U.S. at 656.

declaratory relief from an alleged violation of a contract are flip sides of the same coin. It would be strange indeed if a district court could exercise subject matter jurisdiction over one, but not the other. Instead, the Supreme Court correctly recognized that the power to hear declaratory judgment actions seeking relief from an accused violation of a contract is "ancillary"[5] to, or part and parcel with, a court's power to hear the underlying breach of contract action.

---

[5] The parties vehemently disagree over what Justice Scalia expressed when he used the word "ancillary." IATSE argues that Justice Scalia was referring to the court's "ancillary jurisdiction," thereby implying that there had to be an independent basis for jurisdiction to allow the court to reach a declaratory judgment action. That interpretation is unpersuasive for a number of reasons. First, Justice Scalia did not specifically invoke the doctrine of "ancillary jurisdiction," which allowed federal courts to exercise jurisdiction over certain claims because they were closely related to claims over which the court had subject matter jurisdiction and was ultimately replaced by statute by the doctrine of supplemental jurisdiction. More importantly, by the time *Textron* was decided, the concept of "ancillary jurisdiction" had been replaced with "supplemental jurisdiction," which would make a reference to a legal doctrine that was defunct at the time odd at best. *See* 28 U.S.C. § 1367(a) (1990). It would be uncharacteristic of a punctilious wordsmith such as Justice Scalia to use a superseded term, without adding at least an "obs." (for obsolete) after "ancillary." Finally, Justice Scalia's statement regarding declaratory judgment plaintiffs came in the context of his examples of when a court could "adjudicate the validity of a contract under § 301(a)." 523 U.S. 657–58. This context indicates that these examples, including that of a declaratory judgment plaintiff, are examples where the court has jurisdiction under section 301(a). *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 180–82 (2012) (noting that the Harmonious-Reading Canon requires that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory").

Aside from its reference to the *Textron* court's "gateway," the majority provides no support for its decision to discard clear guidance from the Supreme Court. Ignoring the Supreme Court's direction, the majority insists that a violation of the CBA must be "an element of [Nu Image's] claim," a requirement found in neither the statute nor *Textron*. Such a formalistic approach defies the *Textron* court's reading of section 301(a) as providing jurisdiction over suits "filed because a contract has been violated." Simply put, a suit seeking declaratory relief from an alleged violation of a contract is a suit filed "because" of an accused violation of the contract.[6]

Additionally, the majority's opinion means that parties in Nu Image's position cannot independently choose to present their arguments in a judicial forum. As discussed above, Nu Image could not raise its arguments regarding the validity of the CBA's residual contribution payment provision in the First or Second Plans-Nu Image Lawsuits because our precedent bars such arguments in certain ERISA cases. *See* discussion *supra* at 15–16. Thus, Nu Image was left to pay the Plans and seek compensation from IATSE

---

[6] The majority contends that my reading of *Textron* would "expand section 301(a) beyond recognition" and grant any party access to federal court "merely by alleging that another party claimed, *in any context*, a contract violation." This characterization ignores *Textron*'s limiting guidance: a suit for violation of a contract is a suit "filed because a contract has been violated." This language demonstrates that there must be some causal link between the alleged contractual violation and the lawsuit. Thus, a plaintiff's mere allegation that another party had alleged a contract violation in a wholly unrelated context would be insufficient to invoke Section 301(a)'s jurisdictional grant. Here, however, Nu Image seeks declaratory relief *from the very violation* IATSE has alleged. There is a clear, definitive link between the alleged violation and Nu Image's claim, rendering this a suit "filed because a contract has been violated."

after the fact.  But while the majority's decision means that section 301(a) empowers IATSE to sue Nu Image in federal court for failure to make the residual contribution payments—a right the Plans also have under ERISA—it deprives Nu Image of the opportunity to press its claims or defenses in that same court unless IATSE chooses a judicial forum.  This result is not only inefficient, it also gives one party—IATSE, in this case—the power to dictate whether another party—here, Nu Image—can raise its arguments in a judicial forum, or only in the grievance forum, which IATSE now prefers. The majority's opinion fails to justify this strange outcome.

To summarize, an examination of *Textron* in the context of this case would lead me to two holdings.  First, I would hold that *Textron* has abrogated the reasoning of *Rozay's Transfer*.  Not all suits asserting that a CBA is void invoke the district court's jurisdiction pursuant to section 301(a).  Second, following *Textron*'s guidance, I would hold that a district court has jurisdiction to hear a declaratory judgment action brought by a plaintiff seeking relief from what a counterparty to the CBA has alleged is a violation of a CBA.  Because Nu Image's Complaint seeks just this sort of relief, I would hold the district court had jurisdiction under section

301(a) to hear Nu Image's claims and erred in dismissing those claims for want of subject matter jurisdiction.**[7]**

---

**[7]** Finally, because I would hold that *Textron* did not here remove jurisdiction from the district court, it would be necessary to reach IATSE's alternative argument that Nu Image's claims are barred by the Supreme Court's opinion in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010). I would hold that *Granite Rock* does not bar jurisdiction in this case. IATSE argues that *Granite Rock* stands for the proposition that no tort claim is cognizable under section 301(a) and, as a result, Nu Image's Complaint, which is based on tort-misrepresentation does not fall within section 301(a)'s grant of jurisdiction. There are at least two problems with this argument.

First, Nu Image's claims sound, at least partially, in contract. A suit for a declaratory judgment that a contract is unenforceable as a result of a fraudulent misrepresentation can be maintained as an action in contract. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) ("A claim for declaratory judgment as to the existence of a contract is an action sounding in contract."); *see generally* 1A C.J.S. Actions § 126. Thus, at a minimum, Nu Image's request for a declaration that the residual contribution provisions of the CBA are unenforceable survives *Granite Rock*.

Second, *Granite Rock*'s holding is not as broad as IATSE contends. The *Granite Rock* court itself "emphasize[s]" that its holding is a narrow one. 561 U.S. at 312. The *Granite Rock* court simply declined to recognize a new federal common law tort for tortious interference with a CBA. *Id.* at 312–13. *Granite Rock* did not speak to the availability of misrepresentation actions under section 301(a). Because Nu Image does not bring a claim for tortious interference with a CBA, *Granite Rock* does not bar Nu Image's claims.